### STATE v. RUTH BELL HAMMOND.

(Filed 19 November, 1924.)

**1. Criminal Law—Indictment—Several Counts—Verdict.**

Where a bill of indictment contains two or more valid counts, for offenses of the same grade and permitting like punishment, a general verdict of guilty will be construed as a conviction on each and every count contained in the bill, and an exception thereto will not be allowed for reversible error unless it extends to and vitiates the entire verdict.

**2. Intoxicating Liquor—Spirituous Liquor—Statutes—Federal Law.**

The State has the power through legislation to further regulate and control the manufacture, sale, etc., of intoxicating liquor beyond the restrictions contained in a Federal statute upon the subject, the latter

prevailing in interstate regulations in case of conflict; and the State statute may consistently give further effect or efficiency to the Federal statute upon the subject as it relates to State regulation.

### 3. Same—Possession—Prima Facie Case.

Chapter 1, Laws 1923, generally known as the Turlington Act, with certain reservations as to existing State laws, establishes the rule now prevailing on the subject of prohibition and it applies to the extent that it is inconsistent with former legislation and is in conformity with valid Federal statutes on the subject where interstate regulation is concerned.

### 4. Same—Turlington Act.

Under the provisions of the Turlington Act, (sec. 2), it is made unlawful to manufacture, sell, barter, transport or possess intoxicating liquor except as therein authorized, these provisions to be liberally construed to prevent the use of such liquor as a beverage; and the possession of such liquor is made prima facie evidence of the violation of the law, but allowing the possession thereof for the personal consumption of the owner and bona fide guests, etc.: *Held,* the possession of a large quantity of whiskey in the home of the defendant raised the prima facie case of her guilt, permitting the inference from the method of its being bottled, etc., that it was for the purpose of an unlawful sale, or that it had been received for unlawful purposes, defendant's motion as of nonsuit thereon was properly denied.

### 5. Issues—Receiving.

Where a quantity of liquor is found in the possession of defendant sufficient to raise a prima facie case of her guilt of having unlawfully received it in violation of our statutes, the prima facie case so established may be rebutted by her showing that her possession was lawful under the statutory qualification, the burden remaining with the State to show guilt beyond a reasonable doubt.

CRIMINAL ACTION tried before *Lane, J.,* and a jury, at August Term, 1924, of MOORE.

In the bill of indictment, found at April Term, 1920, there were four counts:

1. For unlawful possession of intoxicating liquors for the purposes of sale.

2. Unlawful transportation.

3. For unlawful receiving such liquor.

4. Unlawful purchasing, etc.

On plea of not guilty, the following evidence was offered by the State:

"F. T. Currie testified for the State: I am a deputy sheriff and was acting as such on or about 6 April, 1924, at Pinehurst, in Moore County. On said date I had a search warrant to search the home in which the defendant, Ruth Bell Hammond, lived, and searched the house where she lived under that authority. When we made the search, we found the defendant away from her home, she having gone to

STATE *v.* HAMMOND.

Carthage at that time. I found a darky by the name of George Fowler and his wife at her home and we proceeded to search the house. We found between four and five gallons of corn whiskey. The whiskey was in bottles inside the closet. We took a pin out of the hinges and went in. The door was locked. The whiskey was in bottles from a quart down to a half a pint.

"The bottles were of different kinds; some had paper stoppers and some had cork. I would say that there were about thirty-two or more bottles. Mr. Knight and Mr. McDonald searched the cellar. I saw what they brought up. It was three five-gallon oil cans. I examined the oil cans and found they had had whiskey in them. We destroyed the whiskey. We found in that closet also a hand-bag which had defendant's name on it, and this was full of these bottles. The bottles in the hand-bag had whiskey in them. Her name was on the outside of the grip or suitcase in which we found the bottles. When we arrested the defendant, she said she thought she was allowed whiskey for her own personal use; she said the whiskey was hers. She made this statement to me at her house the next morning. No one lived in this house with her at that time that I know of. She had been living there in this house all the summer.

Cross-examination: "This was all the summer just immediately preceding my finding the whiskey that the defendant lived in the house. I think maybe she had been there longer than that, using this house as a dwelling, taking care of it for Mrs. Hall and living there. She had been living there some time. This whiskey was found in a closet in the house in which she lived and in the part of the house she occupied. Some of the bottles were quart bottles. I think there was something like half of it in quart bottles. The other was pints and half pints. It was a grip we found in the closet and it was full of bottles of whiskey. I do not recollect how many. She was not at home at the time we made the search."

Defendant moved for a judgment of nonsuit, and this being overruled, offered no evidence. The cause was submitted to the jury, who rendered a general verdict of guilty. Judgment on the verdict and defendant excepted and appealed, assigning errors. These assignments as presented in the argument and maintained in the brief being:

1. The refusal of defendant's motion for nonsuit.

2. Refusal to give defendant's prayer for instructions: "If the jury find from the evidence that the house in which the intoxicating liquors in question were found was at the time used and occupied as the dwelling only of defendant and such liquors were for her personal consumption

only and her bona fide guests, when entertained by her therein, the jury will return a verdict of not guilty."

3. To the charge of the court on the count for receiving.

*Attorney-General Manning and Assistant Attorney-General Nash for the State.*

*U. L. Spence for defendant.*

HOKE, C. J. It is recognized in this State that where a bill of indictment contains two or more valid counts for offenses of same grade and permitting like punishment, a general verdict of guilty will be construed as a conviction on each and every count contained in the bill, and an exception will not be allowed for reversible error unless it extends to and vitiates the entire verdict. *S. v. Switzer,* 187 N. C., p. 88; *S. v. Strange,* 183 N. C., p. 775; *S. v. Toole,* 106 N. C., p. 736.

Again, it is held that the power of a State to enact statutes in regulation of the manufacture, sale and disposition of intoxicating liquors is not rested alone or dependent upon the Eighteenth Amendment to the Federal Constitution, the Prohibition Amendment, but by virtue of its sovereignty and in the reasonable exercise of its police powers, the State may if it sees proper establish more stringent regulations on this subject than are contemplated by the amendment referred to, with the limitation that the State may not authorize or sanction that which the National Amendment prohibits, and that if, in case of concurrent legislation as therein authorized, designed to enforce the amendment, there is conflict between the Federal and State law, the provisions of the Federal statute shall prevail. *S. v. Harrison,* 184 N. C., p. 762; *S. v. Barksdale,* 181 N. C., p. 621; *S. v. Fore,* 180 N. C., p. 744; *Rhode Island v. Palmer,* 253 U. S., p. 350.

Considering the record in view of these accepted principles, both of which will be found pertinent to some of the questions presented, our State statute containing the general regulations on the subject appears in chapter 1 of the Laws of 1923, commonly spoken of as the Turlington Act. Although entitled "An act to make the State law conform to the national law in relation to intoxicating liquors," it is in some respects both more searching and more stringent than the Federal legislation, and contains also a saving clause as to any local acts prohibiting the manufacture, sale or other disposition of intoxicating liquors. With this exception, however, and as to the State generally, the statute is clearly intended to and does establish the rule now prevailing on the subject where it applies and to the extent that the same is inconsistent with former legislation. The case of *S. v. Foster,* 185 N. C., p. 674, apparently to the contrary, is decided and should be properly made to

rest on the ground that the Turlington Act being prospective in its operation, and the act charged in *Foster's case* having occurred prior thereto, the same should be dealt with under the law as it formerly existed and under the principles approved in *S. v. Perkins,* 141 N. C., p. 797, and *S. v. Mull,* 178 N. C., p. 748.

As applied to the facts of the instant case, the sections of the statute referred to and more directly relevant to the questions presented, are as follows :

"Sec. 2. No person shall manufacture, sell, barter, transport, import, export, deliver, furnish, purchase, or possess any intoxicating liquor, except as authorized in this act; and all the provisions of this act shall be liberally construed, to the end that the use of intoxicating liquor as a beverage may be prevented," etc.

"Sec. 10. From and after the ratification of this act, the possession of liquor by any person not legally permitted under this act to possess liquor shall be prima facie evidence that such liquor is kept for the purpose of being sold, bartered, exchanged, given away, furnished, or otherwise disposed of, in violation of the provisions of this act. But it shall not be unlawful to possess liquor in one's private dwelling while the same is occupied and used by him as his dwelling only, provided such liquor is for use only for the personal consumption of the owner thereof and his family residing in such dwelling, and of his bona fide guests when entertained by him therein."

Except where changed or modified in other portions of the law expressly providing for the manufacture, acquirement and sale, or other disposition of intoxicating liquors for nonbeverage, sacramental, or medicinal purposes, and the modification as to possession of such liquors in the closing part of section 10, this law contains an absolute inhibition of the acts specified in section 2; and as to the possession of such liquors, it is provided in section 10 that the mere possession of the same by persons not legally permitted under this act to possess liquor shall be prima facie evidence that the same is kept for the purpose of being sold, etc., in violation of the provisions of the act, except that the possession of liquors in a man's private dwelling shall not be unlawful if only for the personal consumption of the owner and his family residing therein, and of his bona fide guests when entertained by him.

It is entirely competent for the Legislature to establish a rule affecting the probative force of pertinent evidence, as it has done in this section 10 (*S. v. Barrett,* 138 N. C., p. 630), and under our decisions applicable the artificial weight thus imparted by the statute to the evidence of possession, in our opinion, applies, as his Honor ruled, to the possession of liquors at any place, in the home or elsewhere, and will suffice to carry the cause to the jury, and to uphold a conviction

STATE *v.* HAMMOND.

with or without additional evidence if they are thereby satisfied beyond a reasonable doubt of defendant's guilt. *Speas v. Bank, ante,* 524; *S. v. Wilkerson,* 164 N. C., p. 431; *S. v. Falkner,* 182 N. C., p. 793; *S. v. Bean,* 175 N. C., p. 748; *S. v. Wilbourne,* 87 N. C., p. 529.

Under the principles declared and approved by these decisions, the motion for nonsuit was therefore properly and necessarily overruled. Under the statute, the mere possession of the liquor presented a prima facie case, carrying the issue to the jury; and in addition, on the facts in evidence, without reference to the effect and influence of the statute, there would be a permissible inference of guilt from the quantity of the liquor, its evident concealment, and the manner in which it was found, bottled and stored, part of it being already in a valise or hand-bag of defendant.

On the second assignment of error, as above set out, to the effect that if the jury should find from the evidence that the intoxicating liquor was in the home of the defendant only for the personal use and consumption of herself or her bona fide guests when entertained by her, they would render a verdict of not guilty. We think the prayer embodies a correct proposition, so far as the charge of unlawful possession is concerned, and should have been given if restricted to that count, but the failure or refusal to give the instruction may not be held for reversible error because such refusal does not necessarily or probably affect the verdict on the other counts in the bill. As heretofore stated, there is a general verdict of guilty, amounting to a conviction on each and every count in the bill, and the prayer could not have been properly given because of the requested direction therein of a general verdict of not guilty.

And so in reference to the assignment of error as to the charge of the court on the count for unlawfully receiving. Such charge was, in part, as follows: "There is also a provision in the law which says that one shall not receive any liquor in their possession, and there is a count in this bill charging this defendant with receiving it unlawfully. If a person is found in possession of a quantity of liquor, that is prima facie evidence that they received it unlawfully." And again, "The only way they can have any (liquor) lawfully is to have received it prior to the first of March, last year. Now, if a person had some on hand before that time, in possession of it, and had it in their possession for their own personal use, then it would not be a violation of the law to continue to keep it in their possession, but to have received any since the first of March, last year, even though for their own personal use, would be a violation of the law against receiving, and to have it in possession is prima facie evidence that they have it in possession for the offense charged—that is, for sale, barter, exchange, and so on."

On careful perusal of the act known as the Turlington Act, we find no provision which in express terms prohibits one from receiving intoxicating liquors. Except as embraced and included by the acts which are prohibited in the statute, the mere receiving of intoxicating liquors is not forbidden. As shown in section 2 of the act, one is not allowed "to manufacture, sell, barter, transport, export, deliver, furnish, purchase, or possess intoxicating liquors," except as heretofore explained and modified, but if received only in one's home (without violation of the acts as specified and prohibited in the statute), and is kept there only for the consumption of the owner and his family and the bona fide guests entertained by him, this constitutes no breach of the present statute, though received since the same was enacted. It is, to our minds, therefore, bad pleading to make the mere receipt of liquor the subject of a separate and independent count; and the charge that the mere receipt of same, though only in the home of the recipient, and kept there only for a lawful purpose, is forbidden, is not warranted by any proper construction of the statute that has been suggested to us.

As heretofore stated, however, the instruction complained of, being only on the count for unlawful receiving, does not effect a vitiation of the entire verdict, and may not therefore be .held for reversible error. See, generally, *S. v. McAllister*, 187 N. C., p. 400.

On careful consideration of the entire record, we are of opinion, and so hold, that the judgment below should be affirmed.

No error.