LOUIS FOURNIER *vs.* JOHN P. TROIANELLO.

Essex.    May 3, 1955. — June 3, 1955.

Present: QUA, C.J., WILKINS, SPALDING, WILLIAMS, & COUNIHAN, JJ.

*Unfair Sales Act. Unfair Competition. Equity Jurisdiction,* Unfair sales. *Constitutional Law,* Police power, Due process of law.

The proprietor of a retail market selling certain kinds of bread had standing under G. L. (Ter. Ed.) c. 93, § 14H, inserted by St. 1938, c. 410, § 1, to bring a suit in equity to enjoin the proprietor of another retail market from violating §§ 14E–14K, as amended, by advertising for sale, offering to sell, or selling the same kinds of bread at less than the cost of the bread to the defendant as a retailer.    [639]

A suit in equity could be maintained by the proprietor of a retail market selling certain kinds of bread against the proprietor of another retail market in the same city to enjoin the defendant from advertising for sale, offering for sale or selling the same kinds of bread at less than the cost of the bread to the defendant as a retailer in violation of G. L. (Ter. Ed.) c. 93, §§ 14E–14K, inserted by St. 1938, c. 410, § 1, as amended, on the ground that such conduct of the defendant might cause irreparable injury to the plaintiff where it appeared that following newspaper advertisements by the defendant offering to sell, without any stated limitation of time, the bread at a price below such cost, customers of the plaintiff asked to buy the bread at that price, although the two markets were two miles apart and there were many "stores" nearer the defendant's market, and the volume of the defendant's business was much larger than that of the plaintiff's business.    [639]

There was no merit in a contention by the proprietor of a retail market that the unfair sales act, G. L. (Ter. Ed.) c. 93, §§ 14E–14K, inserted by St. 1938, c. 410, § 1, as amended, violates art. 1 and art. 10 of the Declaration of Rights of the Massachusetts Constitution.    [639–640]

BILL IN EQUITY, filed in the Superior Court on April 16, 1954.

The suit was heard by *Rome,* J.

*Alfred L. Daniels & Vincent C. Manzi,* for the defendant, submitted a brief.

*John M. Hogan,* (*Malcolm V. McCabe* with him,) for the plaintiff.

WILKINS, J.    The plaintiff and the defendant own and operate retail markets in Lawrence.    By this bill in equity,

brought under the unfair sales act, G. L. (Ter. Ed.) c. 93, §§ 14E–14K, inserted by St. 1938, c. 410, § 1, as amended, the plaintiff seeks to restrain the defendant from advertising, offering to sell, or selling certain named standard sized loaves of sliced white bread, seventeen ounces in weight, at less than his cost as defined in § 14E, as amended. From a decree granting injunctive relief, the defendant appealed.

The judge made findings, rulings, and an order for decree. The plaintiff, on April 14 and 15, 1954, and for a considerable period before, owned and operated a retail market at 501 South Broadway, for the sale of groceries and other food products, including "Betsy Ross" and "Wonder" brand breads. On the same dates and for a considerable earlier period the defendant's market was at 105 Lawrence Street, for the sale of the same commodities. Their markets were two miles apart. On April 14, 1954, the defendant inserted a full page advertisement in the Evening Tribune, a newspaper published in Lawrence, reading in part, "All sliced American Bread Loaf 15 Cents Wonder — Betsy Ross — Life — Twentieth Century — Whitehouse." On the following day the defendant inserted a similar advertisement in the Lawrence Daily Eagle, a newspaper published in Lawrence. On April 14 and 15, 1954, and for at least thirty days prior thereto, the net invoice price per seventeen ounce loaf of "Betsy Ross" and "Wonder" bread delivered to and paid for by the defendant was seventeen cents a loaf, exclusive of any markups to cover in part the cost of doing business as provided in § 14E. Following the advertisements customers came to the plaintiff's market and asked to buy the same brands at fifteen cents a loaf. During the first quarter of 1954 the respective volumes of business done by the plaintiff and by the defendant were $17,500 and $150,000.

The judge ruled that the defendant was offering to sell the said bread at less than cost to him as a retailer within the meaning and intent of c. 93, §§ 14E–14H; and that continuance of such practice could result in irreparable injury to the plaintiff as a seller at retail of similar breads.

The final decree enjoined the defendant (1) from violating the unfair sales act, G. L. (Ter. Ed.) c. 93, §§ 14E–14K, by advertising for sale, offering to sell, or selling sliced white bread, bearing the brands "Betsy Ross" or "Wonder," at less than the cost of the said bread to him as a retailer as defined in the act; and (2) from advertising for sale, offering to sell, and selling bread at retail at his market at 105 Lawrence Street or elsewhere in Lawrence, in competition with the plaintiff, at less than the cost thereof to the defendant, in violation of the act.

The unfair sales act was first enacted in this Commonwealth by St. 1938, c. 410, § 1, which was entitled, "An Act defining and prohibiting unfair sales practices, with a view to preventing the advertising or offering for sale or the selling, below cost, of merchandise for the purpose of injuring competitors or destroying competition." The basic provision is contained in § 14F, as appearing in St. 1941, c. 494: "Any retailer who, with intent to injure competitors or destroy competition, advertises, offers to sell or sells at retail any item of merchandise at less than cost to the retailer [including certain taxes] . . . shall . . . be punished by a fine . . . or by imprisonment . . . or both . . . . Evidence of any advertisement, offer to sell or sale of any item of merchandise by any retailer or wholesaler at less than cost to him [including certain taxes] . . . shall be prima facie evidence of intent to injure competitors or destroy competition." By § 14E (a), as amended by St. 1939, c. 189, § 1, "The term 'cost to the retailer' shall mean the invoice cost of the merchandise to the retailer within thirty days prior to the date of sale, or the replacement cost of the merchandise to the retailer within thirty days prior to the date of sale, in the quantity last purchased, whichever is lower; less all trade discounts except customary discounts for cash; to which shall be added (1) freight charges not otherwise included in the cost of the merchandise, (2) cartage to the retail outlet if performed or paid for by the retailer, which cartage cost shall be deemed to be three fourths of one per cent of the cost of the merchandise to the retailer,

unless said retailer claims and proves a lower cartage cost, and (3) a mark-up to cover in part the cost of doing business, which mark-up, in the absence of proof of a lesser cost, shall be six per cent of the total cost at the retail outlet." In § 14G certain transactions are excepted from the operation of the act, such as clearance sales, sales of imperfect, damaged, or perishable merchandise, or sales "where the price of merchandise is made in good faith to meet competition." By § 14H, "Upon complaint of any person, the superior court shall have jurisdiction to restrain and enjoin any act forbidden or declared illegal by any provision" of the unfair sales act.

The plaintiff is entitled to sue by virtue of § 14H. "The State has power to confer jurisdiction upon its courts to consider suits at the instance of those who have very remote and even no personal interest in the subject matter. . . . A stated number of citizens or a single individual may be clothed by the Legislature with authority to invoke the aid of courts in the suppression of violations of law." *Barrows* v. *Farnum's Stage Lines, Inc.* 254 Mass. 240, 243. He has also a right to maintain this suit on the ground that the illegal acts of the defendant might cause him irreparable damage. *New York, New Haven & Hartford Railroad* v. *Deister*, 253 Mass. 178, 181. The plaintiff did not have to await actual damage. The advertisements to sell below invoice cost contained no date of expiration. Irrespective of whether it was necessary to make a finding that the plaintiff and the defendant were competitors, the judge could properly find on the reported evidence that the defendant's advertising had caused unrest among the plaintiff's customers, and from this finding it could be inferred in a city of the size of Lawrence that there was competition between them even if their markets were two miles apart. Such a finding was not precluded by the relative amounts of business transacted in the two markets nor by the testimony of the defendant that there were thirty to forty "stores" within a quarter of a mile of his market.

The defendant's brief argument that the unfair sales act

is in violation of art. 1 and art. 10 of the Declaration of Rights calls for brief discussion. He can, of course, raise such questions only with respect to those parts of the statute which affect his rights involved in the issues before us. *Broadhurst* v. *Fall River*, 278 Mass. 167, 170. *Commonwealth* v. *Brown*, 302 Mass. 523, 526. *Bowe* v. *Secretary of the Commonwealth*, 320 Mass. 230, 245. We do not agree that the prohibition relating to advertising to sell below cost is too vague to be enforced. Nor do we feel able to hold that the Legislature has imposed unreasonable restrictions upon private business, or that § 14E (a) "deprives a citizen of the Commonwealth of his equal and natural rights to engage in commerce for profit, and use his property in any reasonable manner for the best interests of the citizens of the Commonwealth." The defendant cites but two Massachusetts cases, neither of which upholds his contentions. Of these, *Merit Oil Co.* v. *Director of the Division on the Necessaries of Life*, 319 Mass. 301, 303, supports the legislative action. It was there said, "The Legislature may regulate and even prohibit the advertising of goods and prices if, in its judgment, such action is reasonably necessary for the promotion of the public safety, the safeguarding of the public health, the protection of the public morals or the advancement of the public welfare. Prohibition of advertising detrimental to the public interest has been frequently sustained by this court. . . . Limitations have been properly imposed on methods and places of advertising." In *Sperry & Hutchinson Co.* v. *Director of the Division on the Necessaries of Life*, 307 Mass. 408, it was held unreasonable to prohibit the use of trading stamps in connection with sales of motor fuel or the changing of posted prices within twenty-four hours. The case before us is obviously quite different.

In *Commissioner of Corporations & Taxation* v. *Ryan*, 323 Mass. 154, a similar statute relating to so called "Cigarette Excise" was considered without any reference to possible unconstitutionality. See *Commonwealth* v. *Dyer*, 243 Mass. 472, 498–499. Since no question is raised under the Fed-

eral Constitution, we do not refer specifically to cases in other jurisdictions cited by the plaintiff. See cases collected in 118 A. L. R. 506 and 128 A. L. R. 1126.

*Decree affirmed with costs of the appeal.*