360 P.2d 643

ROCKY MOUNTAIN WHOLESALE COMPANY, Inc., a corporation, Plaintiff-Appellee,

v.

PONCA WHOLESALE MERCANTILE COMPANY, a corporation, Defendant-Appellant.

No. 6781.

Supreme Court of New Mexico.

Feb. 8, 1961.

Rehearing Denied April 12, 1961.

Iden & Johnson, Albuquerque, for appellant.

Louis C. Lujan, Albuquerque, for appellee.

NOBLE, Justice.

This appeal results from a judgment permanently enjoining and restraining appellant from selling cigarettes at less than "cost to wholesaler" as defined in § 49–3–2(i), N.M.S.A. 1953 Comp. and from violating the New Mexico Cigarette Fair Trade Act. The case was tried to the court without a jury.

The New Mexico Cigarette Fair Trade Act (§§ 49–3–1 to 49–3–14 N.M.S.A. 1953 Comp.) makes it unlawful for any retailer or wholesaler "with intent to injure competitors or to destroy or substantially lessen competition, to advertise, offer for sale, or sell at retail or wholesale, cigarettes at less than cost to such retailer or wholesaler, as the case may be, as defined in this act."

The statute defines "cost to wholesaler" as:

"(i) (1) 'Cost to wholesaler' shall mean the basic cost of the cigarettes involved to the wholesaler plus the cost of doing business by the wholesaler, and must include, without limitation, labor costs (including salaries of executives and officers), rent, depreciation, selling costs, maintenance of equipment, delivery costs, all types of licenses, taxes, insurance and advertising. (2) In the absence of proof of a lesser or higher cost of doing business by the wholesaler making the sale, the cost of doing business by the wholesaler shall be presumed to be two per centum (2%) of

the basic cost of the said cigarettes to the wholesaler, plus cartage to the retail outlet, if performed or paid for by the wholesaler, which cartage cost, in the absence of a proof of a lesser or higher cost, shall be presumed to be three-fourths of one per centum (¾ of 1%) of the basic cost of the said cigarettes to the wholesaler."

It is further provided that any person injured by any violation may maintain an action for injunctive relief.

Appellant's challenge to the act is that it violates Article II, §§ 4 and 18 of the New Mexico Constitution and the 14th Amendment to the Constitution of the United States. The first attack is that it is an unreasonable and arbitrary interference with private property rights; that it has no reasonable or substantial relation to the public morals, safety or general welfare; and that it is not within the proper exercise of the police power of the state. We cannot share appellant's view.

■ That the New Mexico act has as its purpose the prevention of monopolies and the prohibition of acts which threaten free competition is scarcely open to question. This is not a price fixing act but one which only prohibits the sale of cigarettes at below cost. While the statute sets forth a formula which shall be considered as the cost of doing business in the absence of proof of a greater or less cost to an individual wholesaler or retailer, it, nevertheless, makes provision whereby any wholesaler or retailer by any accepted accounting procedure may establish that his cost of doing business is greater or less than the statutory formula. Certain exceptions to the prohibition against sales below cost are provided, such as the right to sell below cost in good faith to meet competition and others which need not be discussed here, since no contention is made that any sale complained of comes within any of the specified exceptions.

■ We think it has been firmly established that a state is free to adopt an economic policy that may reasonably be deemed to promote the public welfare and may enforce that policy by appropriate legislation without violation of the due process clause so long as such legislation has a reasonable relation to a proper legislative purpose and is neither arbitrary nor discriminatory. Nebbia v. People of State of New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940.

"That the prevention of monopolies and the fostering of free, open and fair competition and the prohibition of unfair trade practices is in the public welfare is obvious, and requires no further citation of authority." Wholesale Tobacco Dealers Bureau of Southern California v. Nat. Candy & Tobacco Co., 11 Cal.2d 634, 82 P.2d 3, at page 10, 118 A.L.R. 486.

We think it would serve no useful purpose to quote at length from the many decided cases sustaining the constitutionality of acts similar to the one under attack here. In May's Drug Stores v. State Tax Commission, 242 Iowa 319, 45 N.W.2d 245, 247 it was said:

"No one at this date questions the right of the legislature to enact measures, under its police power, that are designed to prohibit acts which threaten free competition."

A great many of the decisions of the Supreme Court of the United States and of the several states sustaining such legislative acts, are collected, quoted from and cited in Wholesale Tobacco Dealers Bureau of Southern California v. Nat. Candy & Tobacco Co., supra.

That there is a general feeling that sales below cost substantially lessen free competition is attested by the fact that at least thirty-one states have enacted statutes proscribing sales below costs and that the courts of most such states have agreed that legislation prohibiting below cost sales and having as their purpose the prevention of monopolies and the destruction or substantial lessening of competition are within the police power of the state to promote the general welfare. The following courts, among others, have sustained such legislation against constitutional attack. May's Drug Stores v. State Tax Commission, su-

pra; Wholesale Tobacco Dealers Bureau of Southern California v. Nat. Candy & Tobacco Co., supra; State v. Walgreen Drug Co., 57 Ariz. 308, 113 P.2d 650; Carroll v. Schwartz, 127 Conn. 126, 14 A.2d 754; State of Kansas v. Consumers Warehouse Market, Inc., 183 Kan. 502, 329 P.2d 638; Moore v. Northern Kentucky Independent Food Dealers Ass'n, 286 Ky. 24, 149 S.W.2d 755; Fournier v. Troianello, 332 Mass. 636, 127 N.E.2d 167; McElhone v. Geror, 207 Minn. 580, 292 N.W. 414; Associated Merchants of Montana v. Ormesher, 107 Mont. 530, 86 P.2d 1031; Hill v. Kusy, 150 Neb. 653, 35 N.W.2d 594; McIntire v. Borofsky, 95 N.H. 174, 59 A.2d 471.

The decisions cited by appellant as supporting its position that such acts are not properly within the state's police power are not applicable to the statute now being considered. They are, for the most part, cases dealing with non-signer clauses where the legislatures have prohibited the sale of trade-marked or patented merchandise at below the retail price fixed by the manufacturer. It must be realized that the statute under consideration does not regulate or fix the price of cigarettes, but only prohibits sales below cost with intent to injure competitors or lessen competition. The distinction between the two types of legislation was pointed out in Wholesale Tobacco Dealers Bureau of Southern Cal-

ifornia v. Nat. Candy & Tobacco Co., supra, where it was said:

"We believe that these cases clearly establish the constitutionality of the statute here under attack. The statute must be held to be a reasonable attempt upon the part of the state to accomplish a valid object. It must be borne in mind that this statute does not regulate the selling of commodities—it is the predatory trade practice of selling below cost with intent to injure competitors which the legislature on reasonable grounds has determined is vicious and unfair that is prohibited. Such determination is clearly within the legislative power."

Likewise our decision in Skaggs Drug Center v. General Electric Co., 63 N.M. 215, 315 P.2d 967, is neither in point nor controlling on the issues here since it was restricted to a non-signer clause in our Fair Trade Act, N.M.S.A. 1953 Comp. § 49–2–1 et seq.

We conclude that the statute under attack must be held to be a reasonable attempt by the state, in the interest of the general welfare to protect free competition and bears a reasonable relation to the legislative purpose. As was said in May's Drug Stores v. State Tax Commission, supra:

"In concluding that the legislature has the power to act on the subject matter of sales below cost and their impact on free competition we of course make no determination as to the wisdom of such laws. That is an economic question which this court is not free to decide."

Our next inquiry is whether the act is arbitrary and discriminatory.

The trial court found that both appellant and appellee are distributors or wholesalers of cigarettes and other merchandise and that appellant has been selling to Furr's Supermarkets, Safeway Stores Inc., Food Mart and Tootie's Cashway Supermarkets cigarettes at six cents per carton below "cost to wholesaler" as defined by the statute. No evidence was offered that appellant's "cost to wholesaler" is less than the statutory formula. The trial court also found that appellee has lost customers, profits and sales by reason of appellant's conduct and that in making such sales appellant has violated the New Mexico Cigarette Fair Trade Act. The court found that each of these stores are retailers, and it is conceded that each of them have the privilege of buying direct from the manufacturer.

But we are told that because the act permits one wholesaler to sell to another wholesaler below cost but denies such wholesaler the right to sell below cost to a retailer privileged to buy direct from the manufacturer, the act is arbitrary and discriminatory.

The effect, appellant contends, is to prevent sales by wholesalers to direct buying retailers unless such sales can be made below cost to the wholesaler.

The statute, however, specifically provides that a direct buying retailer must include in his retail price, the basic cost of the cigarettes and both "cost to wholesaler" and "cost to retailer". It is conceded that a direct buying retailer would pay to the manufacturer the same basic price for the cigarettes that the wholesaler must pay. Therefore, unless the direct buying retailer can prove, by an acceptable accounting method, that his cost of doing business is less than the percentages fixed by statute for "cost to wholesaler" and "cost to the retailer", both statutory percentages must be included in the retail price.

We find nothing arbitrary or discriminatory in the legislative act denying a wholesaler the right to sell below cost to a direct buying retailer but permitting such wholesaler the right to sell below cost to another wholesaler. Whether a wholesaler sells to another wholesaler or to a retailer it is intended that there be but one "cost to wholesaler" and one "cost to the retailer" in the ultimate price to the consumer. As we have seen, the direct buying retailer is required to include in his retail price both the "cost to wholesaler", the cost of delivery and the "cost to the retailer".

We recognize that laws which prohibit sales of merchandise below cost cannot be sustained if the only purpose is to make such sales illegal. Wiley v. Sampson-Ripley Co., 151 Me. 400, 120 A.2d 289. However, we find no merit to appellant's contention since the New Mexico act makes such sales below cost illegal only when the sale is "with intent to injure competitors or substantially lessen competition * * *."

In this connection appellant asserts there is no substantial evidence that it made any sales below cost with intent to injure competitors or to substantially lessen competition. It is said that since its only below cost sales were to retailers privileged to buy direct from the manufacturer that these retailers would have resorted to direct buying unless they were sold at below cost; that this would result in the elimination of all sales by wholesalers to such direct buying retailers, and negatives any intent to injure competitors or lessen competition.

Prima facie evidence of intent to injure competitors or to destroy or substantially lessen competition is made by a showing of sales below cost. § 49–3–3(b), N.M.S.A. 1953 Comp., reads:

"Evidence of advertisement, offering to sell, or sale, of cigarettes by any retailer or wholesaler at less than cost to him as defined by this act shall be prima facie evidence of intent to in-

jure competitors and to destroy or substantially lessen competition."

Sales at less than cost are permitted under certain exceptions or conditions enumerated in the act. However, appellant does not rely on any of the specified exceptions but only upon the assertion that the retailers to whom it sold below cost were privileged to buy direct from the manufacturer and the belief of appellant that such retailers would have exercised their direct buying privilege unless appellant sold cigarettes to them below cost.

Appellant argues that § 49-3-3(b), N.M.S.A. 1953 Comp., quoted above, in providing that proof of the facts specified therein "shall be prima facie evidence of intent to injure competitors and to destroy or substantially lessen competition" is invalid and unconstitutional because there is no rational connection between the facts declared to constitute prima facie proof and the facts inferred therefrom or "presumed" as stated by appellant. We are satisfied that there is a rational and reasonable relationship between the facts required to be proved and the conclusion based thereon by direction of the statute, and the statutory provision is constitutional and valid. Similar statutes have been upheld in Rust v. Griggs, 172 Tenn. 565, 113 S.W.2d 733; Mering v. Yolo Grocery & Meat Market, Cal.App.1942, 127 P.2d 985; People v. Gordon, 105 Cal.App.2d 711, 234 P.2d 287;

State v. Wilkerson, 164 N.C. 431, 436, 79 S.E. 888; State v. Hammond, 188 N.C. 602, 125 S.E. 402. See note in 162 A.L.R. 494, 532.

It is next urged that without the prima facie effect accorded the evidence by the statute there is no substantial evidence of intent to injure competitors or to destroy or substantially lessen competition. Appellant asserts that "prima facie" and "presumption" are synonymous and that our decisions in Morris v. Cartwright, 57 N.M. 328, 258 P.2d 719 and Hartford Fire Ins. Co. v. Horne, 65 N.M. 440, 338 P.2d 1067, hold that when any other credible and substantial evidence has been introduced which will support a finding to the contrary the presumption disappears as though it had never existed and the burden is then upon the plaintiff to establish such intent by a preponderance of other evidence. Accordingly it is argued, that appellant, having denied such intent, and having given reasons for its conduct from which the court could have found a lack of such intent, there remained nothing upon which the court could base its finding and conclusion that appellant intended to injure competitors or destroy or substantially lessen competition.

Although it is true that courts have ofttimes used "presumption" and "prima facie" interchangeably and as if they were synonymous, the fact remains that this practice has long been criticized. Also, it is

clear that courts have been prone to apply rules and create distinctions where actually no differences existed.

■ The statute here is one declaring that proof of certain facts shall constitute prima facie evidence of another controlling fact. It is not a presumption of law, nor is it a presumption at all in the true sense, but is a statutory declaration of the probative value and admissibility of certain evidence in relation to the issue of intent. 1 Jones on Evidence (5th Ed.) § 12. Thus it prescribes a rule of evidence. Broderick v. Rosner, 294 U.S. 629, 55 S.Ct. 589, 79 L.Ed. 1100.

As used in the statute being considered the "prima facie evidence" does not disappear upon the production of proof to the contrary, but remains as evidence to be considered by the trier of the facts along with all other evidence in the case. Thomes v. Meyer Store, Inc., 268 Mass. 587, 168 N.E. 178; Gemma v. Rotondo, 62 R.I. 293, 5 A.2d 297, 122 A.L.R. 223; Hill v. Cabral, 62 R.I. 11, 2 A.2d 482, 121 A.L.R. 1072. See also 1 Jones on Evidence (5th Ed.) Chapter II.

■ In addition it seems clear to us that the intent to injure competitors or substantially lessen competition was amply established by the evidence aside from the prima facie effect given by the statute.

There is testimony that appellee sold cigarettes to one of the Furr retail stores in Albuquerque at prices within the provisions of the Cigarette Fair Trade Act and that appellant during the same period sold to two other Furr retail stores, allowing them a rebate of six cents per carton on cigarettes; that the Furr retail store ceased buying from appellee and has since bought from appellant with a rebate of six cents per carton on cigarettes.

■ There is also testimony that appellant's policy of selling cigarettes at below "cost to wholesaler" has resulted in some retailers discontinuing buying from appellee and giving their business to appellant. On the other hand, there is testimony by officers of appellant that such sales below "cost to wholesaler" were not made with intent to injure competitors but merely to prevent such retailers from buying direct from the manufacturer. The evidence is conflicting on the material issue of the intention with which the cigarettes were sold below cost. A review of the evidence in this case convinces us that the findings made by the trial court are supported by substantial evidence. A sound discretion rested in the trial court to grant or deny the injunction and we find nothing to compel us to the view that the court abused this discretion. People v. Black's Food Store, 16 Cal.2d 59, 105 P.2d 361.

■ Whether we would have reached a different conclusion is not the point. If there is substantial evidence to support the

trial court's action in granting or denying injunctive relief the trial court's exercise of its discretion will not be disturbed. As was said in State, by Clark v. Wolkoff, 250 Minn. 504, 85 N.W.2d 401, at page 411, regarding the purpose or intent to injure a competitor by sales below cost:

"Whether the actions of the defendants were with the requisite dual purpose or had such effect was a question of fact to be resolved by the trier of fact. We emphasize what we have repeatedly said, that we may only interfere with the findings of the lower court where the evidence taken as a whole furnishes no substantial support for such findings. If the evidence fairly tends to support the findings—if reasonable persons might draw different conclusions from the evidence—then the findings should not be disturbed."

See Brown v. Cobb, 53 N.M. 169, 204 P.2d 264; Marchbanks v. McCullough, 47 N.M. 13, 132 P.2d 426.

The trial court found that appellant sold cigarettes to Safeway, Food Mart and Tootie's Cashway at below cost. Appellant complains that there is no substantial evidence that it sold to Tootie's Cashway at below cost. The testimony of Mr. Schnaubert, owner of Tootie's Cashway Supermarket, was that Mr. Wooten of Wooten Grocery Company, a wholesaler in

Amarillo, Texas, and Mr. Busby of appellant company came to him with a proposition regarding the sale to his store of cigarettes:

"Q. What was the proposition—explain it? A. We were to buy our tobaccos from Ponca Wholesale, to be billed, however, to Wooten Grocery Company, and we would pay Wooten Grocery Company.

"Q. Now what was the purpose of that

*   *   *   *   *   *

"A. I presume to get around the state law—no rebates on cigarettes.

"Q. Was that talked about at that time? A. Yes.

"Q. Was that the real purpose? A. Yes sir."

Through the arrangement between appellant and Wooten Grocery Company, Tootie's Cashway Supermarkets received a rebate of three cents per carton on cigarettes and the retailer ceased buying from appellee and commenced buying its cigarettes from appellant. Sales made in this manner are nevertheless sales by appellant. We are not impressed by the contention. The evidence supporting the trial court's finding is substantial. We conclude from a review of the evidence that there is substantial evidence to support the trial court's finding of loss and injury to appellee by rea-

son of the sales made by appellant below cost.

We find substantial evidence in the record to support findings No. 12 and 13 by the trial court.

Finally appellant assigns as error the refusal of the trial court to give appellant's requested findings of facts numbered 10, 11 and 12.

Appellant, in substance, requested the trial court to find that Furrs and Safeway are privileged to buy cigarettes direct from the manufacturer and threatened to do so unless permitted to buy at less than cost to wholesaler; that appellant has sold at below cost only to retailers who can buy direct from the manufacturer; and that in making sales at less than cost to wholesaler appellant did not intend to injure competitors or to destroy or substantially lessen competition.

■ Under the view we have expressed it was not necessary for the trial court to find whether the retailers to whom appellant sold at below cost did or did not have direct buying privileges or whether they threatened to exercise such direct buying privilege unless they could buy below

cost to wholesaler as defined by the statute, nor whether appellant sold to any retailer except those so privileged. We have held there is substantial evidence to support a finding that such sales below cost by appellant did injure appellee. As we construe Merrick v. Deering, 30 N.M. 431, 236 P. 735, relied upon by appellant, only the ultimate facts, and not the evidentiary facts, are required to be found by the court. The trial court found:

"11. That Plaintiff has lost customers, profits and sales because of Defendant's acts and conduct."

We find no merit to appellant's contention.

■ § 49-3-11, N.M.S.A. 1953 Comp., provides that if the court shall enjoin or restrain a violation of the act the court shall assess in favor of plaintiff and against the defendant, the cost of the suit, including reasonable attorney fees. Appellee is awarded the sum of $2,500 as attorney's fee in the Supreme Court.

Finding no error the judgment is affirmed and it is so ordered.

COMPTON, C. J., and CARMODY, CHAVEZ and MOISE, JJ., concur.