628 P.2d 329

**Raymond CASILLAS, Plaintiff-Appellant,**

v.

**S.W.I.G. and Argonaut Insurance Company, Defendants-Appellees.**

**No. 4825.**

Court of Appeals of New Mexico.

April 9, 1981.

Writ of Certiorari Denied May 21, 1981.

Charles W. Cresswell, Martin, Martin, Lutz & Cresswell, P.A., Las Cruces, for plaintiff-appellant.

J. Douglas Compton, Bivins, Weinbrenner, Richards & Paulowsky, P.A., Las Cruces, for defendants-appellees.

## OPINION

WOOD, Judge.

Plaintiff suffered a compensable injury and is being paid compensation benefits. His suit made two claims: (1) that our compensation statute violated due process to the extent the disability benefits were inadequate in amount; and (2) that he was entitled to a ten percent increase in disability benefits under our safety device statute, § 52–1–10, N.M.S.A. 1978. The trial court ruled against each claim; plaintiff appeals.

*Due Process—Amount of Disability Benefits*

Plaintiff recognizes that he comes within § 52–1–9, N.M.S.A. 1978, which provides that his right to compensation is his exclusive remedy against his employer. He recognizes that he is being paid the maximum benefits authorized for a total disability under § 52–1–41, N.M.S.A. 1978, and that the dollar amount of those benefits is limited to the amount payable at the time disability began, see § 52–1–48, N.M.S.A. 1978.

Plaintiff does not claim that a compulsory worker's compensation system is unconstitutional. *Tipton v. Atchison, T. & S. F. R. Co.*, 298 U.S. 141, 56 S.Ct. 715, 80 L.Ed. 1091 (1936); *New York Central R. R. Co. v. White*, 243 U.S. 188, 37 S.Ct. 247, 61 L.Ed. 667 (1917); compare *Howell v. Burk*, 90 N.M. 688, 568 P.2d 214 (Ct.App.1977).

Plaintiff's claim is that New Mexico's compensation statute deprives him of due process because it does not provide sufficient compensation and "relegates disabled workers to a subsistence standard of living." Plaintiff argues that a compensation system which, he claims, is a substitute for the worker's right to recover common-law damages, deprives the worker of due process unless the disability benefits adequately compensate the injured worker. In support of this argument plaintiff points out that the disability benefits being paid to him ($81.32 per week) are two-thirds of his average weekly wage, and that under minimum wage laws in effect at the time of his injury, his minimum wage, at $2.90 per hour for a 40-hour week, would have been $116.00 per week. The inference is that disability benefits which are less than a statutory minimum wage scale establish inadequate compensation and are a violation of due process. The argument is specious because it is based on the view that benefits paid to a disabled worker may not be less than the minimum wage paid to someone working 40 hours a week.

Plaintiff states that he has found no decision which supports his claim; he does, however, refer us to *New York Central R. R. Co. v. White,* supra, which in upholding compulsory compensation, stated:

This, of course, is not to say that any scale of compensation, however insignificant on the one hand or onerous on the other, would be supportable. In this case, no criticism is made on the ground that the compensation prescribed by the statute in · question is unreasonable in amount, either in general or in the particular case. Any question of that kind may be met when it arises.

Plaintiff challenges the amount of disability benefits being paid to him, claiming that with the number of children he supports, the amount is unreasonable.

Plaintiff's claim involves substantive due process. We do not attempt to outline the present boundaries of the concept. See *Lochner v. New York,* 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905); *West Coast Hotel Company v. Parrish,* 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937); *Lincoln Fed. L. U. v. Northwestern I. & M. Co.,* 335 U.S. 525, 69 S.Ct. 251, 93 L.Ed.2d 212 (1949); L. Tribe, *American Constitutional Law* Ch. 8 (1978); Perry, *Substantive Due Process Revisited: Reflections on (And Beyond) Recent Cases,* 71 Nw.U.L.Rev. 417 (1976–77); Perry, *Abortion, the Public Morals, and the Police Power: The Ethical Function of Substantive Due Process,* 23 U.C.L. A.L.Rev. 689 (1976); Wellington, *Common Law Rules and Constitutional Double Standards: Some Notes on Adjudication,* 83 Yale L.J. 221 (1973–74). Rather, we assume, but do not decide, that plaintiff's claim is one on which relief could be afforded, and decide the merits of the claim.

*Pedrazza v. Sid Fleming Con., Inc.,* 94 N.M. 59, 607 P.2d 597 (1980), comments: "A state violates the due process clause when it interferes with a fundamental right or a vested property interest." *Pedrazza* holds that workmen's compensation is not a fundamental right. Assuming that plaintiff has a vested property interest in disability benefits provided by our statute, plaintiff is being paid those benefits. Plaintiff is asserting a due process right to benefits which have not been authorized by the Legislature, specifically, the right to a larger amount for disability. *Pedrazza* states: "This Court will not * * * say that the plaintiffs have a due process property right which the Legislature has not seen fit to confer * * * * " · Under *Pedrazza,* plaintiff's due process claim to larger disability benefits is without merit.

*Rocky Mountain Whole. Co. v. Ponca Whole. Mercan. Co.,* 68 N.M. 228, 360 P.2d 643 (1961), remarks:

[A] state is free to adopt an economic policy that may reasonably be deemed to promote the public welfare and may enforce that policy by appropriate legislation without violation of the due process clause so long as such legislation has a reasonable relation to a proper legislative purpose and is neither arbitrary nor discriminatory.

 The purpose of our workmen's compensation statute is to provide an humanitarian and economical system of compensation to the injured workman. *Graham v. Wheeler,* 77 N.M. 455, 423 P.2d 980 (1967). That our statute has a proper legislative purpose is not questioned. See *Gonzales v. Chino Copper Co.,* 29 N.M. 228, 222 P. 903 (1924). The statute is neither arbitrary nor discriminatory; its provisions apply to all workers subject to the statute. See *State v. Spears,* 57 N.M. 400, 259 P.2d 356, 39 A.L.R.2d 595 (1953). The issue is whether the amount of the disability benefits provided by the act has a reasonable relation to the economic purpose involved.

 The economic purpose is to keep an injured workman and his family at least minimally secure financially, *Aranda v. Mississippi Chemical Corp.,* 93 N.M. 412, 600 P.2d 1202 (Ct.App.1979); "to secure the injured employee against want, and to avoid his becoming a public charge", *Hughey v. Ware,* et al., 34 N.M. 29, 276 P. 27 (1929). "A large discretion is necessarily vested in the Legislature to determine, not only what the interests of the public require, but what measures are necessary for the protection

of such interests." *State v. Spears*, 57 N.M. at 410, 259 P.2d 356.

■ We cannot hold that disability benefits based on two-thirds of plaintiff's average weekly wage have no reasonable relation to the economic purpose of the compensation statute. Plaintiff argues this issue solely on the basis of the dollar amount of the disability benefits; this argument fails to consider other benefits of economic nature conferred by the statute. Some of these benefits are: A uniform scale of compensation which substitutes for the "varying and widely divergent estimates of juries," *Gonzales v. Chino Copper Co.*, supra; a right to compensation which eliminates legal defenses favorable to the employer, § 52–1–8, N.M.S.A. 1978; *Gonzales v. Chino Copper Co.*; medical and related benefits, § 52–1–49, N.M.S.A. 1978, which at the time of the district court hearing amounted to $7,828.64; and rehabilitation services, § 52–1–50, N.M.S.A. 1978. Viewing all of these economic benefits, the amount paid for disability does have a reasonable relation to the economic purpose of our statute; the amount of the disability benefit did not violate due process, either on the face of the statute or as applied to plaintiff.

*Safety Device*

■ Plaintiff sought a ten percent increase in his disability benefits on the basis that the employer had failed "to provide safety devices required by law * * * * *" Section 52–1–10(B), supra. His theory was that certain safety devices were required by regulations adopted under New Mexico's Occupational Health and Safety Act, §§ 50–9–2 and 50–9–7, N.M.S.A. 1978, and that safety devices required by these regulations had not been provided by the employer. The trial court ruled that these regulations were not admissible. There being nothing else showing a failure to provide safety devices required "by law", the safety device issue was dismissed with prejudice.

The trial court ruled correctly that the safety devices required by the regulations were not required "by law" because of § 50–9–21(A), N.M.S.A. 1978. This statute reads:

A. Nothing in the Occupational Health and Safety Act [50–9–1 to 50–9–25 NMSA 1978] shall be construed or held to supersede or in any manner affect the Workmen's Compensation Act [52–1–1 to 52–1–69 NMSA 1978], the New Mexico Occupational Disease Disablement Law [52–3–1 to 52–3–54 NMSA 1978], or to enlarge or diminish or affect in any other manner the common-law or statutory rights, duties or liabilities of employers and employees under the laws of this state with respect to injuries, occupational or other diseases or death of employees arising out of or in the course of employment.

Section 50–9–21(A) provides that *nothing* in New Mexico's Occupational Health and Safety Act affects our Compensation Act, or the liabilities of employers under the laws of this state with respect to injuries arising out of or in the course of employment. Inasmuch as New Mexico's Occupational Health and Safety Act does not affect the employer's liability under our Compensation Act, regulations adopted under the authority of New Mexico's Occupational Health and Safety Act also do not affect that liability, and safety devices required by the Occupational Health and Safety Act regulations are not required "by law" for the purposes of § 52–1–10(B), supra. Compare *Arvas v. Feather's Jewelers*, 92 N.M. 89, 582 P.2d 1302 (Ct.App.1978). We disagree with *Childers v. International Harvester Co.*, 569 S.W.2d 675 (Ky.App.1977), which reached a contrary conclusion without considering the express language contained in the Kentucky statute which is similar to § 50–9–21(A), supra.

The trial court's order rejecting the due process claim, and its order dismissing the safety device claim, are affirmed.

IT IS SO ORDERED.

LOPEZ, J., concurs.

SUTIN, J., dissenting.

SUTIN, Judge (dissenting).

I dissent.

Plaintiff, 28 years of age, suffered an accidental injury on May 15, 1979, in which accident his arms were crushed. As a result, he suffered total disability. Defendants pay plaintiff $81.30 per week, about $4,212.00 annually for maximum compensation payments. The rate of compensation payable is 100% of the average weekly wage in the State as determined by the Employment Security Commission. Section 52–1–41, N.M.S.A. 1978.

Plaintiff claims that § 52–1–41 is unconstitutional in that it deprives plaintiff of his right to property, and his right to due process of law, inasmuch as the amount of money paid is below any reasonable subsistence level. I agree.

The trial court granted defendants a partial summary judgment. Due to the fact that defendants pay plaintiff maximum compensation benefits the court reasoned "That the benefits payable under the Workmen's Compensation Act do not deprive plaintiff of or violate any of his constitutional rights." Plaintiff appeals from this portion of the Order and Partial Summary Judgment.

Plaintiff is married. His family consists of a wife, a stepson and five children, whose ages were 10, 7, 6, 5, 2 and 1 years. The family receives $250.00 per month for food stamps and an additional $114.00 per month for his stepson. He owns a 1968 station wagon.

Plaintiff rents a house which consists of two bedrooms, a kitchen, a living area and a bathroom. His rent and utilities are $160.00 per month. He has no health or life insurance, no savings or checking accounts, nor any property other than his car and household effects. He is heavily indebted. He cannot read or write. His education was had in special education classes that terminated at junior high school level.

Since the accident, there is absolutely no money whatever for anything but the bare necessities of life made possible by government food stamps. Plaintiff cannot provide his family with better health care, clothing, or educational opportunities. He would like to provide life insurance on himself for the benefit of the family. Tension has increased in the family due to lack of resources. To keep his family together, he feels that he should be paid in compensation at least as much as he was paid for his work. These facts have not been controverted.

The purpose of the Workmen's Compensation Act has been stated in many ways: (1) to substitute a more humanitarian and economical system of compensation, *Gonzales v. Chino Copper Co.*, 29 N.M. 228, 222 P. 903 (1924); (2) to provide enough compensation to avoid reducing a claimant to destitution, *Baca v. Gutierrez*, 77 N.M. 428, 423 P.2d 617 (1967); (3) to prevent claimant from becoming a public charge, *Lane v. Levi Strauss & Co.*, 92 N.M. 504, 590 P.2d 652 (Ct.App.1979); (4) to prevent claimant from being on welfare rolls, *Codling v. Aztec Well Servicing Co.*, 89 N.M. 213, 549 P.2d 628 (Ct.App.1976); (5) to keep an injured workman and his family at least minimally secure financially, *Aranda v. Mississippi Chemical Corp.*, 93 N.M. 412, 600 P.2d 1202 (Ct.App.1979); (6) to insure that the claimant may subsist during his period of disability, *Mullins v. National Food Stores of Louisiana, Inc.*, 175 So.2d 19 (La.App. 1965); (7) to relieve against hardships, *Kellams v. Carolina Metal Products*, 248 N.C. 199, 102 S.E.2d 841 (1958); *Baker v. Industrial Commission*, 17 Utah 2d 141, 405 P.2d 613 (1965); (8) to furnish financial protection, *Colclasure v. Industrial Commission*, 14 Ill.2d 455, 153 N.E.2d 33 (1958); (9) to give adequate economic assistance, *Davis v. Cranston Print Works Company*, 86 R.I. 196, 133 A.2d 784 (1957); (10) to provide adequate compensatory payments, *Crilly v. Ballou*, 353 Mich. 303, 91 N.W.2d 493 (1958); (11) to relieve society of burden of supporting helpless children in orphanages and public alms houses, *Franklin v. Jackson*, 231 Miss. 497, 95 So.2d 794 (1958); (12) to protect employees and their dependents unable to support themselves, *Kelly v. Sugerman*, 12 N.Y.2d 298, 239 N.Y.S.2d 114, 189 N.E.2d 613 (1963); (13) to shoulder on industry the

expense incident to the hazards of industry; to lift from the public the burden to support those incapacitated by industry and to ultimately pass on such expense to the consumers of the products of industry, *Renshaw v. U.S. Pipe & Foundry Co.*, 30 N.J. 458, 153 A.2d 673 (1959).

The totality of these purposes evince the philosophy of the Workmen's Compensation Act. It ventures to do economic justice to a totally disabled workman.

Article II, Section 18 of our Constitution says:

> *No person* shall be deprived of life, liberty or property without due process of law * * * * [Emphasis added.]

The term "due process of law" cannot be defined. It is so broad in meaning that limitations cannot be placed upon it. This concept requires only that the legislature shall not offend the traditional notions of "fair play," "substantial justice" or the "general welfare." *In re D. M. D.*, 54 Wis.2d 313, 195 N.W.2d 594 (1972) says that "due process" is the exact synonym for "fundamental fairness." A guaranty of "due process of law" constitutes a legal right assertable in courts. When we adopted our Constitution in 1910, "We could have no purpose except to check the Legislature, as representing the majority *for the time being*, from encroachment upon this reserved right of the minority or of the individual." [Emphasis added.] *State v. Henry*, 37 N.M. 536, 543, 25 P.2d 204 (1933).

*Pedrazza v. Sid Fleming Con., Inc.*, 94 N.M. 59, 607 P.2d 597 (1980) held that property rights in workmen's compensation claims, protected by due process, never vests in nonresident alien dependents; that nonresident alien dependents do not have a "fundamental right" to pursue compensation benefits in New Mexico courts, nor do they have a "vested property interest" in compensation claims if a family workman is fatally injured in New Mexico.

The words "no person" in the Constitution, *supra*, includes a nonresident alien dependent, one who is protected by the "due process clause." Section 52–1–52, N.M.S.A. 1978 specifically denies dependents, who are nonresidents of the United States at the time of a workman's injury, the right to pursue a claim for compensation. This section interferes with the "fundamental right" of nonresident alien dependents to use our courts to recover workmen's compensation benefits. It does constitute a denial of due process.

*Pedrazza* says:

> * * * A state violates the due process clause when it interferes with a fundamental right or a vested property interest. [Citation omitted] No law has been cited, nor can we find any, stating that workmen's compensation is or ought to be ranked as a fundamental right within the framework of the Constitution.
>
> * * * * * *
>
> The worker's * * * right to compensation benefits arise and may be received only as specified by statute * * * * [Id. 599.]

Under *Pedrazza, resident* alien dependents would be protected by the "due process clause." In fact, any dependent resident of a workman has a "fundamental right" to pursue a workman's compensation claim as well as a "vested property interest" in compensation claims. A resident dependent may look to the Workmen's Compensation Act to determine whether any portion of it interferes with such right and vested interest. If § 52–1–41 does interfere with a workman's "vested property interest" in his compensation claim, he has the protection of the "due process clause." He has a "fundamental right" to challenge the constitutionality of that portion of the Act.

In this sense, workmen's compensation does rank as a "fundamental right" if the Act denies a totally disabled workman adequate compensation to meet the reasonably normal needs of a family in the environment in which the family exists. Such compensation must reasonably approach the earnings of a workman prior to the tragic experience that resulted in total disability. Otherwise, the purpose and spirit of the Act fades. The primary purpose of the Act is to lift a totally disabled workman and his fam-

ily out of the depths of economic despair into a realm above the subsistence level. We must avoid eclectic language of judicial opinions to skirt around the seamy side of a poor, uneducated workman and his family. If the Act offends traditional notions of "fundamental fairness," "fair play," "substantial justice" or the "general welfare," it violates the "due process clause."

The "right to make a living" is not a "fundamental right" for purposes of due process. *Frazier v. Liberty Mut. Ins. Co.,* 150 N.J.Super. 123, 374 A.2d 1259 (1977). But inability to earn a living by reason of total disability grants a workman a "fundamental right." A workman who receives so little an amount in compensation payments that it cripples the "life, liberty or property" of the workman and his family, has the right to test "due process of law." To determine whether the effect of the compensation payment offends traditional notions, we look through a wide-angled lens and not one with a restricted focus.

From the time the Workmen's Compensation Act was adopted in 1917, totally disabled workmen received a pittance in compensation payments. In 1917, a workman totally disabled received an amount not to exceed maximum compensation of $10.00 per week, L.1917, ch. 83, § 17(a). This was raised to $15.00 per week, 1929 Compilation, ch. 156, § 156–117(a), then from $15.00 to $18.00 per week in 1937, L.1937, ch. 92, § 9. Over the next four decades, compensation for total disability was gradually but slowly increased.

Effective July 1, 1978, a workman was to receive an amount not to exceed a maximum compensation of one hundred percent of the average weekly wage. Section 52–1–41. If this portion of the statute interferes with a "vested property interest" of plaintiff, the State violates the due process clause.

The gradual increase in compensation payments were legislative attempts to meet the economic purposes of the Workmen's Compensation Act as stated above. To do so, the Legislature must note economic conditions that today exist for some 600 weeks, the period that encompasses total permanent disability. It must also note the effect that compensation payments have upon the subsistence level of family life. A totally disabled workman has a fundamental right to question the Legislature about his "vested property interest," i. e., his compensation payments. These payments must be sufficient to provide the workman and his family with food, clothing, physical and medical care and the incidents that make life pleasant. Scientific, industrial and agricultural developments in this century, unavailable in 1917, should not be denied a family that now suffers the severe burdens imposed upon it by a totally disabled master of the household. We must make it clear that, in New Mexico, a workman who is totally disabled and cannot earn a living for himself and his family, is entitled to have his family live above the subsistence level, not as it existed yesterday, but as it exists today and tomorrow. Compensation payments must reach that level.

The Legislature recognized this problem with reference to the cost of medical care. Prior to 1977, the cost of medical services was limited to $40,000.00. The 1977 amendment deleted "not to exceed the sum of forty thousand ($40,000)" as shown in § 52–1–49. No violation of due process can arise.

The "due process clause" has been a vague, uncertain, indefinite and indistinct concept since the founding of this country. It has been applied as courts view each case from the standpoint of "fundamental fairness." We approach its application to the Workmen's Compensation Act for the first known time. For over half a century, we have looked through a wide-angled lens to favor the workman. We should do so now.

The benefits payable to one totally disabled under the Workmen's Compensation Act does not reach the subsistence level. It deprives plaintiff of, or violates, his constitutional rights under the "due process clause." A genuine issue of material fact exists on whether plaintiff receives adequate compensation.

This portion of the partial summary judgment should be reversed.

Plaintiff also sought to have his compensation payments increased by 10% under § 52–1–10(B) which reads:

In case an injury to * * * a workman results from the failure of an employer to provide safety devices *required by law, or in any industry in which safety devices are not prescribed* by statute, if an injury to * * * a workman results from the negligence of the employer in failing to supply reasonable safety devices *in general use for the use or protection of the workman*, then the compensation otherwise payable under the Workmen's Compensation Act shall be increased ten percent. [Emphasis added.]

There are two bases upon which a 10% increase in compensation can be obtained: (1) the failure of an employer to provide safety devices as "required by law" and (2) the negligence of the employer in failing to supply reasonable safety devices in general use for the use or protection of the workman.

Plaintiff produced a qualified engineer to prove the lack of safety devices. When his expert testimony reached the point at which such lack of safety devices was to be shown, plaintiff, for some unaccountable reason, requested the court to refer to the Occupational Health and Safety Act (OSHA), § 50–9–1 et seq., N.M.S.A. 1978. After much objection and argument, the court ruled that OSHA did not apply. For some unaccountable reason, no further questioning of the expert witness took place. Plaintiff then closed his case.

No evidence was offered or presented on the subject of safety devices as required by § 50–9–21(A).

Section 50–9–21(A) reads:

Nothing in * * * [OSHA] shall be construed or held to supersede or in any manner affect the Workmen's Compensation Act * * * *

This section means (1) that we can take nothing out of OSHA that will take the place of the Workmen's Compensation Act. We do not exercise this replacement in the instant case; (2) "To affect is to produce a result on or to influence." *Gallegos v.*

*Duke City Lumber Co., Inc.*, 87 N.M. 404, 406, 534 P.2d 1116 (Ct.App.1975). We can take nothing out of OSHA that will in any manner produce a result on or influence the Workmen's Compensation Act. What this means is so vague and uncertain as to bear upon speculation. Kentucky holds that OSHA does not prohibit the assessment of the safety device penalty under the Workmen's Compensation Act for violation of a regulation promulgated under the Kentucky KOSHA ACT. *Barmet of Kentucky, Inc. v. Sallee*, 605 S.W.2d 29 (Ky.App. 1980); *Childers International Harvester Co.*, 569 S.W.2d 675 (Ky.1977). See, *American Smelting v. Workers' Compensation, Etc.*, 79 Cal.App.3d 615, 144 Cal.Rptr. 898 (1978). No other authority has been found on this subject matter. Plaintiff is entitled to a 10% penalty if evidence is produced which shows that the employer violated the safety device section of the Act.

No workman should suffer because of the inadvertence of a lawyer who failed to preserve an important issue in an appeal. This case should be reversed and the plaintiff allowed to present evidence, if available, to show a violation of the safety device statute. The time has come in workmen's compensation cases to lay aside technical procedural rules in important cases of public interest. "Fairness" and "justice" should be the emblems of authority.

This case should be reversed. The trial court, in its discretion, should determine from evidence presented, the amount of compensation which would fairly and adequately compensate the plaintiff for total disability during his period of disability and shall allow plaintiff to present evidence, if available, of any violation of the safety device section of the Act.