W. M. WILEY, D/B/A FAIRMOUNT MARKET
*vs.*
SAMPSON-RIPLEY COMPANY

Penobscot.   Opinion, January 19, 1956.

*Hough & Guy,* for plaintiff.

*Robert Preti,* for defendant.

SITTING: FELLOWS, C. J., WILLIAMSON, WEBBER, BELIVEAU, TAPLEY, JJ. WEBBER, J., concurring specially. CLARKE, J., did not sit.

BELIVEAU, J.  Appeal from final decree.  This is a Bill in Equity brought by the plaintiff under the self-termed Unfair Sales Act, now Chapter 184 of the Revised Statutes.

The plaintiff in his bill alleges that on the 6th day of August 1954 the defendant advertised, offered and sold Chase & Sanborn coffee at a price of 99c per pound, which cost it $1.07 or 8c less less than the price paid.  This is not disputed.

A temporary injunction was issued and later, after full hearing, a permanent injunction granted, restraining the defendant from selling this coffee below cost, if done with intent to injure or destroy competition, excepting sales enumerated in Section 3 of Chapter 184.  From this decree the defendant appeals.

The authority, to proceed, as in this case, is found in Subsection 1, Section 4, which provides that

"Any person damaged or who is threatened with loss or injury by reason of a violation or threatened violation of the provisions of this chapter may bring a bill in equity . . . . . . . . . ."

Subsection III of Section 4 makes,

". . . proof of any advertisement, offer to sell or sale of any item of merchandise by any retailer or wholesaler at less than cost to him as herein defined shall be prima facie evidence of intent to injure competitors and destroy competition."

Subsection I of Section 4 entitles,

"the plaintiff to recover from a defendant 3 times the amount of damages sustained and cost of suit including reasonable attorneys' fee."

Several grounds of defense are advanced by the defendant.  One is the constitutionality of the act.

It is recognized that laws which prohibit the sale of merchandise below cost, are not valid, where the only purpose is to make such sales illegal.

*Fairmont Creamery Co.* v. *State of Minnesota,* 274 U. S. 1, 47 Sup. Ct. Rep. 506.

*State* v. *Packard-Bamberger & Co.,* 123 N.J.L. 180, 8 A. (2nd) 291.

To meet this objection, most uniform sales act, as in our case, make such conduct illegal only when the sale below cost is

". . . with intent to injure competitors or destroy competition. . . . . . . ."

If such intent is not established then there is no violation. This law comes within the well recognized police powers of the State, and has for its purpose the prevention of ruthless, unfair and destructive competition, and to that extent is constitutional.

*Carroll* v. *Schwartz, et al.,* 14 A. (2nd) 754.

It is recognized by this court and other courts throughout the country, that any law in derogation of the common law must be strictly construed.

*Surace* v. *Pio,* 112 Me. at 496.

At the time this bill was brought, both parties were engaged in retail grocery business in the city of Bangor. Bangor covers a large area and had in 1950 a reported population of over 31,000; one of the largest cities in this State. While it does not appear in evidence, it must be assumed that many others in that city were engaged in the retail grocery business. The plaintiff carried on a humble business and part of that business was the sale of coffee. Coffee, so the defendant says, was one of some 6,000 items carried in

its store for retail purposes. According to the defense testimony the sale below cost was confined to Chase & Sanborn coffee and was to last for a period of three days. This testimony is uncontradicted.

It is not contended by the plaintiff that the defendant in its proposed sale of coffee had any particular retailer in mind, or that the effect on the plaintiff would be different from that felt by all other grocers doing business in Bangor.

The plaintiff testified he could not prove the loss of business because of the defendant's sale of Chase & Sanborn coffee at the price hereinbefore mentioned and without being specific, assumed it would cause him some damage. It is not in evidence that the sale was aimed at causing damage to the plaintiff or had for its purpose to injure other competitors and destroy competition. There is no evidence of ill will, ill feeling or intent, on the part of the defendant, to eliminate or damage the plaintiff as a competitor. Insofar as this case is concerned the defendant did not know of the plaintiff's existence. The distance between the two stores was considerable. As we have said before, the selling below cost, alone, is not a violation of any part of the Unfair Sales Act and is only effective when done

"with intent to injure competitors or destroy competition."

Under this law the plaintiff was required to make out no more than a prima facie case. This was done and the plaintiff rested. The defendant by necessity was forced to offer a defense and explain the purpose and reason for the sale. This was the only evidence as to what motivated the defendant's action and was not contradicted. The defendant's position is that the sale was not made to injure competitors or destroy competition, and its purpose was to make friends and create good will.

The purpose was legitimate and is not covered by the Unfair Sales Law. It is a practice resorted to by merchants from time immemorial and recognized as proper by the courts and business generally. Where attempts have been made, as we have seen before in this opinion, to prevent it by legislation, such laws have been declared unconstitutional.

If nothing else is involved, a merchant may dispose of his merchandise at such prices as he may see fit to place on his wares.

The defendant's explanation or reasons for the sale of coffee below cost was explained, as we have said before, by William Ripley, President of the defendant corporation, and the only conclusion to be reached is that the so-called sale was proper and legitimate and not a violation of the act.

While we hold that the Unfair Sales Act is constitutional insofar as it seeks to prevent unfair competition and to that extent comes within the police powers of the State, we rule that the prima facie provisions of Section 2 (criminal prosecution), Section 4 (injunctive relief) and Subsection III of Section 4 (prima facie evidence, in civil actions, of intent to injure competitors and destroy competition) are unconstitutional.

In a criminal prosecution the prima facie rule established by this statute lifts from the shoulders of the State the burden of proving the crime, and has, in fact, the practical effect of removing the presumption of innocence and creating a presumption of guilt which the defendant must rebut or disprove in order to escape conviction. This is wholly contrary to, and destructive of well known law that one accused of crime is presumed innocent until proven guilty and that the State must prove beyond a reasonable doubt every ele-

ment of the crime necessary to show violation and secure conviction.

The U. S. Supreme Court passed on the prima facie provision of a California law which prohibited an alien, who was neither a citizen nor eligible for citizenship, from occupying land for agricultural purposes and made such occupancy a crime. It further provided that when such occupancy was proven by the State and the indictment alleged alienage and ineligibility for citizenship, a prima facie case was made out and the burden placed on the defendant to show his right to such occupancy. The court said:

> "Possession of agricultural land by one not shown to be ineligible for citizenship is an act that carries with it not even a hint of criminality. To prove such possession without more is to take hardly a step forward in support of an indictment. No such probability of wrongdoing grows out of the naked fact of use or occupation as to awaken a belief that the user or occupier is guilty if he fails to come forward with excuse or explanation."

*Morrison* v. *People of State of California,* 291 U. S. 82, 54 S. Ct. 281 at P. 285.

> "It is apparent that a constitutional prohibition cannot be transgressed indirectly by the creation of a statutory presumption any more than it can be violated by direct enactment. The power to create presumptions is not a means of escape from constitutional restrictions. And the state may not in this way interfere with matters withdrawn from its authority by the Federal Constitution, or subject an accused to conviction for conduct which it is powerless to proscribe."

*Bailey* v. *Alabama,* 219 U. S. 219, 31 S. C. 145, 55 L.Ed. 191.

> "A prima facie presumption casts upon the person against whom it is applied the duty of going forward with his evidence on the particular point to

which the presumption relates. A statute creating a presumption that is arbitrary or that operates to deny a fair opportunity to repel it violates the due process clause of the Fourteenth Amendment. *Bailey* v. *Alabama,* 219 U.S. 219, 233 et seq., 31 S. Ct. 145, 55 L. Ed. 191. Mere legislative fiat may not take the place of fact in the determination of issues involving life, liberty or property. 'It is not within the province of a legislature to declare an individual guilty or presumptively guilty of a crime.' *McFarland* v. *American Sugar Co.,* 241 U.S. 79, 86, 36 S. Ct. 498, 501 (60 L.Ed. 899)"

*Manley* v. *State of Georgia,* 279 U. S. 1, 49 S. Ct. 279 U. S. 1, 49 S. Ct. 215, 73 L.Ed. 575.

"It is apparent from this decision of the Supreme Court that in determining the validity of a presumption created by a legislative body, two questions are to be considered; (1) Whether the fact presumed may be fairly inferred from the fact proven; (2) whether the presumption created will be of aid to the state without subjecting the accused to unreasonable hardship or oppression. With respect to the presumption created by the sixth paragraph of section 3 of part 2, we have already pointed out that, in our opinion, the fact of guilty intent is not reasonably to be inferred from the fact of sale at less than 10 per cent. above the cost of the goods. No doubt, the presumption of guilt would be helpful to the state in the prosecution of alleged violators of the statute, but it would be as hurtful to the accused as it would be helpful to the accuser. Intent is something which is easily asserted and hard to disprove. To cast upon a merchant who has sold goods at less than 10 per cent. above their cost, the burden of establishing that the sale was not made with an intent to injure competitors or destroy competition, subjects him to unreasonable hardship. We think the disadvantage to him of the presumption of guilt should be regarded as outweighing the advantage of the presumption to the state."

*Great Atlantic & Pacific Tea Co.* v. *Ervin,* Fed. Sup. 23, 82.

The proceedings for injunctive relief or for recovery of damages creates a presumption of violation of the statute by merely showing the evidence of a conduct, the sale below cost, which, as we have seen before, is legal, proper and common practice.

While in actions for an injunction or for recovery of treble damages the plaintiff must allege that the defendant acted

> "with intent to injure competitors or destroy competition. . . . . ."

that fact need not be proved by him as part of his case. In such action, as in a criminal prosecution, the burden is placed on the defendant to satisfy the court that the sale below cost was not a violation of the Unfair Sales Act.

This is clearly contrary to the due process of law clauses of our State and Federal Constitutions.

The appeal is sustained and the bill is to be dismissed without costs to either party.

*Appeal sustained.*

*Bill to be dismissed without costs to either party.*

WEBBER, J., CONCURRING

I concur in the result. In the interest primarily of emphasis, I would like to call particular attention to the tests which must be applied in determining the constitutionality of a prima facie presumption.

As the opinion of the court points out, the plaintiff here was unable to offer any direct evidence whatever of any in-

tent on the part of the defendant to injure competitors or destroy competition. The evidence offered by the defendant that it was merely conducting an advertising sale to last not over three days remained uncontradicted and was the only evidence in the case on that issue. The plaintiff did show an advertisement to sell and sales below cost. To supply the missing but essential evidence of wrongful intent, the plaintiff relied entirely on the statutory presumption R. S., 1954, Chap. 184, Sec. 4, Subsec. III quoted in full in the opinion. If this presumption is valid, the plaintiff has put into the case some evidence of wrongful intent and raised a question of fact; if it is not valid, the plaintiff has failed to offer any evidence in proof of an essential element of his case.

The basic issue is then whether or not the statutory presumption survives the test of constitutionality. The test to be applied in such cases was well stated in 20 Am. Jur. 163, Sec. 159 as follows: "A presumption cannot ordinarily be raised from some fact proved unless a rational connection exists between such fact and the ultimate fact presumed. The legislature cannot constitutionally declare one fact to be presumptive evidence of another unless this rational connection exists." Mr. Justice Holmes in *McFarland* v. *American Sugar Co.,* 241 U. S. 79 at 86; 36 S. Ct. 498 at 501 said: "As to the presumptions, of course the legislature may go a good way in raising one or in changing the burden of proof, but there are limits. It is 'essential that there shall be some rational connection between the fact proved and the ultimate fact presumed, and that the inference of one fact from proof of another shall not be so unreasonable as to be a purely arbitrary mandate.' "

We are familiar with a number of prima facie presumptions created by our own statutes which upon examination will be found to pass the tests of reasonableness and to be founded on common knowledge and experience. The prima

facie effect of certain stated quantities of alcohol found in the blood as set forth in R. S., 1954, Chap. 22, Sec. 150 is firmly based on scientific and medical experience. In *State* v. *Morin,* 102 Me. 290, the statute as it then existed provided in effect that payment of the United States special tax was prima facie evidence that the person paying the tax was a common seller of intoxicating liquors. The court applied the same test of reasonableness and said at page 291: "The process of reasoning, by which guilt may be inferred from this fact, is that it is probable, or, at least, more probable than otherwise, that a person would not pay a tax as a liquor dealer unless he intended to engage in that business, and that consequently it is a proper inference by induction from the fact of such payment that he is engaged in such business." At page 292, the prima facie result is referred to as the inference which may "be ordinarily drawn therefrom." Since the advent of state control of the sale of liquor under proper license, the provision has been altered to read as it now appears in R. S., 1954, Chap. 61, Sec. 84: "Notice of any kind in any place or resort, indicating that liquors are there unlawfully kept, sold or given away shall be held to be prima facie evidence that the person or persons displaying such notice are common sellers of liquors, and that the premises so kept by them are common nuisances." Here again the assumed fact flows normally from the known fact and is in accord with rational probabilities and common knowledge and experience.

When, however, we apply these tests to the presumption under consideration, we are forced to a very different conclusion. One who offers for sale an item at less than cost does not ordinarily intend the destruction of competition. The mere fact that he may be engaged in vigorous but lawful competition is hardly the equivalent of a fixed purpose to create a monopoly. There are too many legitimate reasons which will explain most offerings of articles at less

than cost to permit the assumed wrongful intent as a probable and reasonable inference. It was exactly on this reasoning that the presumption under consideration was declared unconstitutional in *Great Atlantic & Pacific Tea Co.* v. *Ervin,* 23 Fed. Supp. 70. At page 80, the court said: "If all profitless sales of goods were always or were even usually made by merchants for the purpose of injuring their competitors so that it could truly be said that such sales had, in and of themselves, a sinister significance, we would not hesitate to say that the Legislature was within its rights in creating a presumption of sale below cost with wrongful intent. So far as we are aware, however, * * * such sales have not been regarded as indicating an intent to do evil. There are many reasons, aside from a desire to injure competitors, which might induce a merchant to make profitless sales of goods. The statute itself recognizes the right to meet local competition. A sudden necessity of paying claims of importunate creditors might furnish a reason for sales at less than cost * * *. Other similar illustrations are not wanting." And at page 81 the court quoted *McFarland* v. *American Sugar Co., supra* when it stated: " 'The presumption created here has no relation in experience to general facts.' " Our own statutory presumption is practically identical with the one there disposed of as unconstitutional and upon the same reasoning must be held invalid.

In the case before us, the plaintiff, having failed to present any evidence whatever of wrongful intent and being deprived of any reliance upon the prima facie presumption, is not entitled to the injunctive relief which he seeks.