363 P.2d 1038

George T. KORAN, Plaintiff-Appellant,

v.

Lowell E. WHITE, Defendant-Appellee.

No. 6727.

Supreme Court of New Mexico.

Aug. 3, 1961.

Rueckhaus & Watkins, Addison L. Strong, Albuquerque, for appellant.

John E. Hall, Albuquerque, for appellee.

CARMODY, Justice.

Plaintiff appeals from the dismissal of his suit, which sought to establish an oral contract with respect to the net profits from the sale of property purchased by the defendant for subdivision purposes.

The findings of fact and conclusions of law made by the trial court are as follows:

"Findings of Fact

"The court finds as a matter of fact:
"1. That on or about September 18, 1954, the defendant entered into a written agreement with one Omer Tucker in the nature of an option for the purchase of approximately seventy (70) acres of land located near the City of Farmington, in San Juan County, New Mexico.

"2. That on or about January 10, 1955, the defendant exercised his option with Omer Tucker for the purchase of seventy (70) acres of land in San Juan County, New Mexico, and on said date entered into a firm contract for the purchase of said property. Said contract was signed by the defendant and his wife, Margie M. White, and they took as tenants in common. The total purchase price for said property was $140,000.00, payable in installments.

"3. That in addition to the contract purchase price of $140,000.00 the defendant has since expended approximately $51,000.00 for curb and gutter, drainage, and other improvements on and expenses in connection with the acquisition and development of said property.

"4. That the plaintiff did not expend any sum whatsoever in the purchase or improvement of said property.

"5. That at the time that the defendant took said option from Omer F. Tucker in September, 1954, and prior thereto, the plaintiff, George T. Koran, was a licensed general contractor and was engaged in construction work in the State of New Mexico.

"6. That about the month of August, 1954, the plaintiff and the defendant had informal oral discussions with regard to the purchase of the Tucker property by the defendant, White and the subdividing thereof. Such discussions between the plaintiff and the defendant, during said time, involved such matters as having said property brought within the City Limits, having the utilities extended to the site, having the land platted and approved for FHA financing, all in contemplation of a building program to be carried on by the plaintiff, George T. Koran, as a building contractor.

"7. That plaintiff made application to the Federal Housing Administration for approval of said lands for FHA financing and assisted defendant in having the limits of the City of Farmington extended so as to include said tract, all preliminary to construction of dwellings thereon by the plaintiff, but the plaintiff was unable to finance a building program and no final agreement was ever reached with the plaintiff whereby he would build on said property or whereby he acquired any interest therein.

"8. That the oral discussions, conversations and negotiations between plaintiff and defendant relating to said land did not result in a meeting of the minds, and no final oral agreement was ever made by and between said parties.

"9. That plaintiff and defendant have never had any agreement relative to the property involved in this suit which would give any interest whatever in said property or any profits resulting from the sale thereof.

"10. That all of the issues of fact raised by the pleadings are found in favor of the defendant and against the plaintiff.

"Conclusions of Law

"The Court concludes as a matter of law:

"1. That there was no oral agreement between plaintiff and defendant.

"2. That there was no agreement or association or arrangement between plaintiff and defendant of any kind. pertaining to the lands involved in this suit which would entitle the plaintiff to any interest therein or in and to any profits arising from the sale of such lands.

"3. That defendant is entitled to a judgment dismissing the complaint herein.

"4. That the Plaintiff failed to sustain the burden of proof and the evidence was not clear and convincing of an oral contract."

Plaintiff contends that the evidence established an oral contract, and quotes liberally from portions of the testimony which would sustain such a finding. He omits discussion of any testimony supporting the findings of the court. However, the defendant-appellee has rectified this omission by detailing the evidentiary matters which support the findings.

Plaintiff seeks to avoid the necessity of attacking the findings by the argument that, this suit being in the nature of an equitable action, the supreme court will try the case de novo, sift the evidence, and determine the issues independently of the trial court's decision. There is authority that such is the practice in some jurisdictions, either where the age-old distinction between law and equity still exists, or where such appellate procedure is directed by the constitution or by statute. However, this is not the rule in New Mexico, and is not in accord with our appellate practice. Rule 15(6) (Sec. 21–2–1(15) (6), N.M.S.A. 1953) contemplates a direct attack on the questioned findings, and absent such attack, the findings will not ordinarily be disturbed. Witherspoon v. Brummett, 1946, 50 N.M. 303, 176 P.2d 187; Luna v. Flores, 1958, 64 N.M. 312, 328 P.2d 82; Marrújo v. Martinez, 1959, 65 N.M. 166, 334 P.2d 548. The rule, both in its present form and as applied even before adoption of formal rules, does not differentiate between actions at law and equitable proceedings, and it has been given effect by us in many cases which were of an equitable nature [Newcomb v.

White, 1890, 5 N.M. 435, 23 P. 671 (suit in chancery to foreclose liens); Arias v. Springer, 1938, 42 N.M. 350, 78 P.2d 153 (to cancel deed on ground of forgery); Everett v. Gilliland, 1943, 47 N.M. 269, 141 P.2d 326 (fraud and deceit); Hugh K. Gale, Post No. 2182 Veterans of Foreign Wars, of Farmington v. Norris, 1949, 53 N.M. 58, 201 P.2d 777 (to compel trustee to convey title); Bounds v. Carner, 1949, 53 N.M. 234, 205 P.2d 216 (injunction); Provencio v. Price, 1953, 57 N.M. 40, 253 P.2d 582 (specific performance and to quiet title); Archuleta v. Velasquez, 1955, 60 N.M. 97, 287 P.2d 989 (to cancel or reform a deed); and Hines v. Hines, 1958, 64 N.M. 377, 328 P.2d 944 (divorce)], as well as in dozens of cases sounding only in law (see, Luna v. Flores, supra, and Marrujo v. Martinez, supra, where some of the cases are cited).

We do find cases in New Mexico which seem to state a contrary rule; but upon examination thereof, it would appear that the holdings were on the basis that where most of the testimony is by deposition, or by a transcript of the testimony at a former trial by an absent witness, then the appellate court may review the entire record to determine whether the judgment is supported by a preponderance of the evidence. See, In re Jubala's Estate, 1936, 40 N.M. 312, 59 P.2d 356; and Davidson v. Enfield, 1931, 35 N.M. 580, 3 P.2d 979. However, in the instant case, the transcript of the testimony is somewhat in excess of 400 pages, and all but approximately 60 pages thereof was given by witnesses who were seen and heard by the trial court.

■ We are satisfied that the findings of the trial court are based upon substantial evidence, and they will not be disturbed. In a case such as this, where conflicting evidence is so pronounced, the trier of the facts is in a much better position to weigh the evidence than is the appellate court. The reason for such a rule, even in a jurisdiction which follows the so-called de novo rule, is so graphically stated in Creamer v. Bivert, 1908, 214 Mo. 473, 113 S.W. 1118, 1120, that it bears repeating here:

"* * * But the justice of a cause does not alone hang or turn on the count of witnesses on the fingers, or on mere numerical weight. That (by itself) would be a crude rule for establishing a fact. The philosophy of the plan of getting at the fact, in cases of conflict in testimony, has deeper and more sure guides than such easy scheme. Here there was a maze of testimony affecting the credibility of some of the witnesses on both sides; there were currents and cross-currents in it sharply affecting the probability and the improbability of the stories told on the stand. The bulk of the testimony was oral. In such condition of things, while this court has said

over and over again that the whole record must come here in equity cases, so that (sitting as the final arbiter in chancery) we may weigh and decide de novo and thus do equity, yet the court is also fond of saying that deference should be given to the trial chancellor. He sees and hears much we cannot see and hear. We well know there are things of pith that cannot be preserved in or shown by the written page of a bill of exceptions. Truth does not always stalk boldly forth naked, but modest withal, in a printed abstract in a court of last resort. She oft hides in nooks and crannies visible only to the mind's eye of the judge who tries the case. To him appears the furtive glance, the blush of conscious shame, the hesitation, the sincere or the flippant or sneering tone, the heat, the calmness, the yawn, the sigh, the candor or lack of it, the scant or full realization of the solemnity of an oath, the carriage and mien. The brazen face of the liar, the glibness of the schooled witness in reciting a lesson, or the itching overeagerness of the swift witness, as well as honest face of the truthful one, are alone seen by him. In short, one witness may give testimony that reads in print, here, as if falling from the lips of an angel of light, and yet not a soul who heard it, nisi, believed a word of it; and another witness may testify so that it reads brokenly and obscurely in print, and yet there was that about the witness that carried conviction of truth to every soul who heard him testify. Therefore, where an issue in equity rests alone on the credibility of witnesses, the upper court may with entire propriety rest somewhat on the superior advantage of the lower court in determining a fact. * * *"

Even though the plaintiff is thus thwarted in his effort to circumvent the findings, he also contends that, as a matter of law, the pleadings admitted the existence of an oral contract and that therefore the court erred in not so concluding. In making this assertion, plaintiff quotes part of a paragraph of the defendant's answer, and thereafter assumes deletion therefrom of certain words and phrases which the plaintiff contends are legal conclusions, and thereupon places his own construction upon the emasculated paragraph. For example, plaintiff would eliminate such phrases as "preliminary discussions were carried on" and "without any final agreement being made," with the result that he construes the answer to mean just the contrary to that which was obviously intended by the pleader.

In the first place, such an argument was never raised in the trial court, by motion or otherwise, and is apparently an at-

tempt to raise a question not raised below and not jurisdictional, so it will not be considered by us. See, Supreme Court Rule 20(1) (Sec. 21–2–1(20) (1), N.M.S.A. 1953). See, also, Danz v. Kennon, 1957, 63 N.M. 274, 317 P.2d 321; Soens v. Riggle, 1958, 64 N.M. 121, 325 P.2d 709; and Metzger v. Ellis, 1959, 65 N.M. 347, 337 P.2d 609. In the second place, even though we do not deem it necessary to quote the answer in this opinion, plaintiff's construction of the answer is a strained one, and if a rule were to be adopted giving binding effect to the construction placed by adverse parties on their opponents' pleadings, it can well be imagined what a chaotic condition would result. Suffice it to say that, in our opinion, the answer did not admit the contract alleged by the plaintiff, but merely admitted that certain preliminary discussions had been carried on between the parties; that no agreement had been entered into, orally or in writing; and that the negotiations were discontinued after the plaintiff disclosed that he was unable or unwilling to proceed with the development and construction on the property.

From what has been said, we find plaintiff's contentions without merit, and the judgment of the trial court will be affirmed at plaintiff's cost. It is so ordered.

MOISE and NOBLE, JJ., concur.

COMPTON, C. J., and CHAVEZ, J., not participating.