381 P.2d 429

**Norma GIBSON, Plaintiff-Appellant,**

v.

**Elenor HELMS, Defendant-Appellee.**

No. 7035.

Supreme Court of New Mexico.

May 6, 1963.

Dewie B. Leach, Hobbs, for appellant.

L. George Schubert, Lowell Stout, Hobbs, for appellee.

LARRAZOLO, District Judge.

The appellant, who was plaintiff below, sought damages for personal injuries suffered while working as a clerk at the Frey Hotel for the defendants, John B. Frey, Garman Helms and Elenor Helms. At the close of the plaintiff's case, the trial court sustained a motion by the defendant Elenor Helms for a directed verdict in her favor and rendered judgment accordingly. The defendant John B. Frey had been dismissed from the action prior to the hearing before the jury and that matter is not in question in this appeal. The other defendant Garman Helms, husband of Elenor Helms, could not be found for service of process, and, therefore, the only defendant at the time of the trial before the jury was Elenor Helms. The plaintiff appeals from the action of the court in directing a ver-dict against her and in favor of the defendant. The Helmses had obtained a legal separation after the alleged injuries, but before the case was heard by the court.

The plaintiff alleges in her complaint that on or about August 22, 1960, while the plaintiff was in the performance of her duties in said hotel, as a clerk, the defendant Garman Helms, without cause or provocation, unlawfully, wrongfully, unjustly, and willfully made an attack upon the plaintiff by striking her with a one-quart thermos bottle on or near the left elbow; that the defendants John B. Frey and Elenor Helms knew that the defendant Garman Helms was so maliciously or mischievously disposed, particularly while under the influence of intoxicants, that they might have foreseen that he was likely to inflict upon an employee or other persons injuries of the kind in question; that these defendants knew that immediately prior to and at the time of the assault and battery the defendant Garman Helms was under the influence of intoxicants.

The defendant Elenor Helms answered admitting that she was the sole owner and operator of the Frey Hotel and that the plaintiff, Norma Gibson, was employed by the Frey Hotel as a cashier and clerk, but denied all other allegations.

The question to be decided on this appeal is whether or not the court below was justified in directing a verdict in favor of

the defendant Elenor Helms in view of the evidence adduced on the plaintiff's case.

The plaintiff relies on two points for a reversal of the action of the court below in directing a verdict in defendant's favor.

Point 1 of plaintiff's contention is that the question of negligence on the part of an employer who is obligated to furnish his employee a reasonably safe place to perform the duties of the particular task on which he was engaged, is a question of fact to be decided by a jury.

Plaintiff's point 2 is that the district court erred in denying the jury an opportunity to pass its judgment on the question of the defendant employer's negligence resulting from an assault committed by her husband, acting as her agent or vice principal, upon another employee, in the course of her employment.

It is to be noted concerning plaintiff's point 1 that there is no allegation in plaintiff's complaint concerning the failure of the defendant to furnish the plaintiff a reasonably safe place to work. The allegations are based entirely on the alleged maliciousness and mischievousness of the defendant's husband while under the influence of intoxicants, and that the defendant might have foreseen that he was likely to inflict upon an employee injuries of the kind in question and that the defendant knew that immediately prior to and at the time of the assault and battery the defend-

ant's husband was under the influence of intoxicants.

We have read the pleadings and searched the transcript and find no evidence that the premises in which the plaintiff worked were in any way unsafe. The only evidence in the record concerns the conduct of the defendant's husband at the time of the assault and battery. This matter was not brought out in the court below and for that reason, under our Rule 20, such an issue cannot be raised in this court for the first time. Danz v. Kennon, 63 N.M. 274, 317 P.2d 321.

However, resolving the contentions in plaintiff's point 2 to the effect that the district court erred in denying the jury an opportunity to pass its judgment on the question of the defendant-employer's negligence resulting from an assault committed by her husband, acting as her agent or vice principal, upon another employee, in the course of her employment is a more difficult matter to resolve.

There is some evidence in the transcript which the jury heard to the effect that Elenor Helms had held her husband, Garman Helms, out to others in the presence of the plaintiff to be the co-manager of the hotel. There is no question, as far as the record is concerned, that she herself was the owner of the hotel.

On direct examination, the questions and answers asked of the plaintiff were as fol-

lows, concerning the relationship of Garman Helms to the defendant and the management of the hotel:

"Q. Was there any activity on the part of Mrs. Helms that indicated to you that Mr. Helms had any authority around the hotel?

"A. Yes. If anyone asked for the manager, she would say which one of them. She didn't state to anyone that she alone was the manager.

\* \* \* \* \* \*

"Q. Was there ever any statements [sic] made by Mr. Helms in the presence of the defendant, Mrs. Helms, concerning his managerial authority or his authority at the hotel?

"A. No, he never did. Not in front of Mrs. Helms.

"Q. Now, from whom did you take orders from at the hotel?

"A. Mrs. Helms or Mr. Helms, if he gave an order. I just understood that they were both managers.

\* \* \* \* \* \*

"Q. Now, what did he do after she left the room in connection with you, if any?

"A. He kept taking his phone off of the hook and calling out on the switchboard. And, of course, the minute any of the guests takes the phone off of the hook, the switchboard makes a buzzing sound, ringing, and I would answer him and he would say, 'What does a man have to do to get something to eat.' I offered to call the cafe or order something for him or call a cab so he would get out and get it himself. And, he would tell me to go to Hell. And, some of the time he would put the phone back on the hook and some of the time, he didn't.

"Q. Now, just before this episode, the assault now, what did he do then?

"A. Well, he called out again, and he didn't put his phone on the hook, and I sent the porter back to see if he could get it up, because as long as it wasn't up, I would either have to plug it up on the switchboard or sit there and watch it, in case someone else called in. And, when the porter went back, Mr. Helms just shoved him out of the door. So, I had to leave the plug in on the switchboard and watch it.

"Q. Then, what did Mr. Helms do?

"A. I looked up and he was standing at the end of the desk. And, he

**156**

said, 'By God, when I give an order around here, I want it carried out.' I understood he was drunk and I knew he had picked up something but I didn't know what. It happened so quick, I just automatically threw up my arm and that is what I dodged; it was a thermos bottle.

"Q. Now how long had you been working at the Frey Hotel?

"A. I have worked for Mr. and Mrs. Frey off and on since 1956. And, I was working there when Mr. and Mrs. Helms took over the hotel, July 1st. * * *"

■ The foregoing testimony indicates that insofar as the plaintiff was concerned, she understood by the actions of Mrs. Helms as well as those of Mr. Helms that he was at least in a supervisory managing capacity of the hotel and that she was to take orders from both Mr. and Mrs. Helms.

There is also other evidence from other persons shown in the transcript which would indicate that Mr. Helms was at least acting in a supervisory capacity in connection with the management of the hotel.

The case of Miera v. George, 55 N.M. 535, 237 P.2d 102, contains the following quotation from the Restatement of the Law, (2d) Agency, Sec. 245, as follows: ·

"Use of Force.

"A master who authorizes a servant to perform acts which involve the use of force against persons or things, or which are of such a nature that they are not uncommonly accompanied by the use of force, is subject to liability for a trespass to such persons or things caused by the servant's unprivileged use of force exerted for the purpose of accomplishing a result within the scope of employment.

"*Comment:*

"a. *Nature of employment.* Whether or not an employment involves or is likely to lead to the use of force against the person of another is a question to be decided upon the facts of the individual case. To create liability for a battery by a servant upon a third person, the employment must be one which is likely to bring the servant into conflict with others. The making of contracts or the compromise, settlement, or collection of accounts does not ordinarily have this tendency. On the other hand, the employment of servants to recapture property, to take possession of land, or to deal with chattels which are in the possession of another, is likely to lead to altercations, and the master may become liable, in spite of

instructions that no force shall be exerted against the person of the possessor."

In connection with the above observation, see, also, Romero v. Shelton, 70 N.M. 425, 374 P.2d 301. This case contains our latest expression on the subject, wherein appears a good discussion of the difference in liability where the act is done by an "agent" as distinguished from a "servant."

■ A manager of a hotel in the performance of his duties is daily brought into direct contact with other employees of the hotel as well as with guests and the public generally. Although this does not contemplate physical contact or assaults, when Mr. Helms, as a superior to plaintiff in his managerial capacity, commits an assault on her, his employer or master may be held responsible. See Romero v. Shelton, supra. This factor of the circumstances may be pointed out in this particular case by the language which Mr. Helms used towards the plaintiff, as shown by the transcript: "By God, when I give an order around here, I want it carried out." This statement was made by the defendant's husband to the plaintiff immediately preceding the alleged assault and battery.

The testimony contained in the transcript further indicates that this entire argument, mostly on the part of the defendant's husband, was during the time that Mr. Helms was highly intoxicated and was in his room where he and Mrs. Helms resided in the hotel and was conducted mostly by telephone from the defendant's room to the hotel switchboard where the plaintiff was working. The main point of the argument concerned Mr. Helms' desire to have something to eat brought to his room. When it was not brought to his room, the above statement was made by Mr. Helms to the plaintiff and the alleged assault and battery occurred.

There is testimony in the transcript indicating that Mr. Helms for several days prior to the date of the alleged assault and battery had been drinking and that during the day of the alleged assault and battery he was highly intoxicated. These facts were known by Mrs. Helms. There is also evidence in the transcript indicating that Mr. Helms had been arguing violently with Mrs. Helms prior to the alleged incident and that Mrs. Helms had told the plaintiff immediately prior to the alleged incident not to tell Mr. Helms where Mrs. Helms had gone in order to avoid further argument.

■ It, therefore, appears under the facts of this case that there was sufficient evidence in the record, for the jury to consider, to show that because of Mr.

Helms' condition during the day and his conduct toward Mrs. Helms that Mrs. Helms might have had reasonable cause to know that Mr. Helms was in such a condition that he was likely to resort to force and unjustifiable conduct concerning persons in the hotel, including the plaintiff, during the time that she left him alone in such condition, considering the fact that there is evidence in the record of such a character that the jury might find that he was a servant of the hotel owner at the time.

The Restatement of the Law, Agency (2d), Sec. 250, provides that:

"A manager of a store, an attorney employed as a subordinate in a law office, and a salesman in a store giving his full time to the employment are all within the master and servant relation with their employers, although their primary function is the negotiation and bargaining associated with the word 'agent.'"

The same principle applies to a manager of a hotel who acts as an "agent" in supervising its operations. In acting as such he is serving as a "servant" in the sense that term is used in Restatement of Agency (2d) and in the discussion in Romero v. Shelton, supra. See, also, Bomba v. Borowicz, 265 App.Div. 198, 38 N.Y.S. 2d 403.

It, therefore, appears that although Mr. Helms was acting in his own interest at the time, nevertheless, because of his possible servant relationship with the defendant, it is entirely possible that the jury might have found that in the over-all picture of his relationship with the defendant in the management of the hotel he could have been acting in the course of employment with a view to furthering the interests of the hotel and of the defendant and that his actions were fairly and naturally incident to the business of the hotel, although what Mr. Helms did was done ill-advisedly while under the influence of intoxicating liquor. See Childers v. Southern Pacific Company, 20 N.M. 366, 149 P. 307.

In ruling on defendant's motion for directed verdict at the close of the plaintiff's evidence, the evidence must be viewed in light most favorable to plaintiff, indulging in his favor every legitimate inference that may be drawn therefrom and ignoring conflict in evidence unfavorable to him. Thompson v. Dale, 59 N.M. 290, 283 P.2d 623.

In view of what has been said above, we feel that there was a legitimate question of fact to be determined by the jury

and that the granting of the motion for a directed verdict was error on the part of the court below.

The action of the district court should be reversed and a new trial should be granted to the plaintiff. It is so ordered.

CHAVEZ and MOISE, JJ., concur.