421 P.2d 798

**DRINK, INC., Plaintiff-Appellant,**

**v.**

**Howard BABCOCK, Chief of Division of Liquor Control, Bureau of Revenue, Defendant-Appellee.**

No. 7942.

Supreme Court of New Mexico.

Nov. 7, 1966.

Motion to Intervene and for Rehearing Denied Jan. 3, 1967.

278

Hannett, Hannett & Cornish, William C. Schaab, Albuquerque, for appellant.

Boston E. Witt, Atty. Gen., Joel M. Carson, Tom Overstreet, Asst. Attys. Gen., Santa Fe, for appellee.

## OPINION

NOBLE, Justice.

This appeal requires our determination of whether the fair-trade contract and minimum markup provisions of the Liquor Control Act are constitutional.

Plaintiff corporation, a retail liquor dealer, sought a declaratory judgment to determine the constitutionality of §§ 46–9–1, 46–9–3, and 46–9–11, N.M.S.A. 1953, or, in the alternative, an injunction to prohibit enforcement of those provisions of the law by the director of the liquor division. The trial court held that there was a failure to prove the challenged provisions to be unconstitutional and denied injunctive relief. This appeal followed.

Our attention has not been called, nor can we find the decision of any court of last resort ruling on the constitutionality of a statute identical to ours. It follows that the decisions from other jurisdictions are of little help. We are concerned with the particular language of the New Mexico statutes.

The Liquor Control Act was enacted by ch. 236, Laws 1939. Section 1303, as amended by § 7, ch. 80, Laws 1941 (§ 46–9–3, N.M.S.A.1953) prohibits the sale of alcoholic liquors "unless uniform, standard, minimum fair-trade prices be set thereon and posted in accordance with section 1301, article 13 [46–9–1] when sold by the package." Section 1301 (§ 46–9–1, N.M.S.A.1953) in turn authorizes the creation of fair-trade contracts relating to the sale or resale of alcoholic liquor which bears the trademark, brand, or name of the producer. This contract may provide that the buyer will not resell such liquor except at the price stipulated by the producer, and may require that a subsequent purchaser (retail dealer) agree that he will not resell except at the price stipulated by the producer. The two sections interplay to require the distiller, by contract, to establish the wholesale and retail prices of his product and prohibit the sale of trademarked liquor not bearing an established and published price.

Section 46–9–1(c), N.M.S.A.1953, goes on to declare that sales of trademarked liquor at less than the contract price constitute unfair competition. Such a sale gives rise to a right of action by anyone damaged thereby, and subjects the seller

**280**

to criminal penalties, whether he is or is not a party to the contract. Other provisions of this Act limit the gross profit to be stipulated by the contract to 33⅓% of the retail selling price for retailers and 18⁴⁵⁄₁₀₀% of the wholesale selling price for wholesalers.

We recognize that the legislature has the power not only to regulate the sale of alcoholic beverages, but to suppress it entirely, and may impose on the liquor industry more stringent regulations than on other businesses. But when the manufacture and sale of liquor is lawful, as it is under our laws, statutes providing for the regulation of the business are limited by constitutional guaranties and must fall within the proper exercise of the state's police power.

In testing the constitutionality of statutes, courts must indulge in every presumption in favor of the validity of the legislation. Baca v. Perez, 8 N.M. 187, 42 P. 162; State v. Armstrong, 31 N.M. 220, 243 P. 333; State v. Thompson, 57 N.M. 459, 260 P.2d 370; State ex rel. Dickson v. Saiz, 62 N.M. 227, 308 P.2d 205; State ex rel. Hovey Concrete Products Co. v. Mechem, 63 N.M. 250, 316 P.2d 1069; Bradbury & Stamm Constr. Co. v. Bureau of Revenue, 70 N.M. 226, 372 P.2d 808. This principle applies with equal force in a determination of whether a statute amounts to a proper exercise of the police power. We have said that the state may adopt an economic policy reasonably deemed to promote the public welfare, and may enforce such a policy by appropriate legislation without contravening due process so long as such legislation has a reasonable relation to a proper legislative purpose and is neither arbitrary nor discriminatory. Rocky Mountain Wholesale Co. v. Ponca Wholesale Mercantile Co., 68 N.M. 228, 360 P.2d 643.

Sections 46–9–1 and 46–9–3 provide for what is generally referred to as a non-signer or "vertical agreement," fixing the resale prices of a commodity by contract between the manufacturer and a wholesaler without regard to whether the retailer is a party to the contract. The validity of the non-signer provisions of the Liquor Fair-Trade Act is challenged as denying appellant due process and the equal protection of the law.

The record discloses that the appellant is a non-signer liquor dispenser. Although the trial court made no specific finding of a contract authorized by § 46–9–1 between a distiller and a wholesaler, § 46–9–3 prohibits the sale of any alcoholic beverage unless the price therefor has been stipulated by a fair-trade contract and published in a trade journal. The court did find that such fair-trade prices were so published, as follows:

"3. The minimum prices which may be charged for the sale of alcoholic beverages in New Mexico are listed in the

New Mexico Beverage Journal, a trade publication."

The state argues that the Supreme Courts of many states have upheld the validity of such fair-trade statutes. We are aware of those decisions generally adopting the theory of Old Dearborn Distributing Co. v. Seagram Distillers Corp., 299 U.S. 183, 57 S.Ct. 139, 81 L.Ed. 109, 106 A.L.R. 1476, that liquor dealers, by purchasing trade-marked goods with knowledge of the fair-trade contract, impliedly assented to the contract and thereby ratified and became bound by it. The courts adopting this reasoning conclude that such non-signer fair-trade laws are not price-fixing statutes. The validity of such non-signer fair-trade statutes was laid at rest in this State, however, by our decision in Skaggs Drug Center v. General Electric Co., 63 N.M. 215, 315 P.2d 967. There, after discussing and quoting at length from many of the decisions of other states expressing conflicting views, we held that such laws do amount to price-fixing statutes, and said:

"* * * we are of the opinion that the better reasoning and logic are to be found in those decisions above quoted at some length which have declared the Fair Trade Acts unconstitutional and void."

We perceive no valid distinction between the fair-trade statutes considered in Skaggs and §§ 46-9-1 and 46-9-3, N.M.S.A. 1953, and are of the opinion that Skaggs is controlling and requires our determination that §§ 46-9-1 and 46-9-3, supra, are unconstitutional and void. See Comment, 4 Natural Resources J. 189.

Appellant next attacks the mandatory markup provisions contained in § 1410, ch. 236, Laws 1939, as amended by § 2, ch. 258, Laws 1963 (§ 46-9-11, N.M.S.A. 1953), as being a price-fixing statute constituting an improper exercise of the state's police power. The section in question, § 46-9-11(B), N.M.S.A. 1953, declares that advertising, offers to sell, or sales of alcoholic beverages by either wholesalers or retailers at less than cost:

"* * * with the intent or effect of inducing the purchase of other merchandise, or of unfairly diverting trade from a competitor, or of otherwise injuring a competitor, impair and prevent free competition, and are contrary to the public policy of this state, and are violations of this section."

Cost is then defined as the delivered price of the beverage, including taxes, labels, containers, etc., plus a markup amounting to not less than the minimum cost of operation in the handling of the liquor by the most efficient wholesaler or retailer. In the absence of satisfactory proof to the contrary, made before the sale to the chief of the liquor control division, this markup is 12½% on liquor, 23% on wine and 18% on beer for the wholesaler, and is 38⅗% on

liquor and wine and 25% on beer for the retailer.

Appellee, arguing that this section of the liquor statute is similar to the Cigarette Act, §§ 49-3-1 to 49-3-14, N.M.S.A. 1953, relies heavily upon Rocky Mountain Wholesale Co. v. Ponca Wholesale Mercantile Co., supra, which held that the prohibition of sales of cigarettes at a price below cost with intent to injure competitors or lessen competition was a valid exercise of the state's police power. Appellant, conversely, argues that Rocky Mountain Wholesale is not controlling because the effect of § 46-9-11 is not only to prohibit below-cost sales but to establish a fixed, standard, uniform price for liquor and contains a built-in protection of a net profit to liquor dealers. These opposing contentions succinctly state the issue before this court.

In construing particular statutory provisions to determine legislative intent, an entire act is to be read together so that each provision may be considered in its relation to every other part, and the legislative intent and purpose gleaned from a consideration of the whole act. 2 Sutherland, Statutory Construction, §§ 4703 and 4704. The Liquor Control Act was enacted as comprehensive legislation to regulate and control the sale of alcoholic beverages. It cannot be doubted that the fair-trade provisions, which we have said are unconstitutional, authorized protection of a gross profit to wholesalers and retailers within the limits prescribed by §§ 46-9-5 and 46-9-6. Because both the minimum markup section of the Liquor Control Act and that of the Cigarette Act purport to prohibit below-cost sales, in principle at least, the minimum markup section of the Liquor Control Act would appear on its face to be a valid exercise of police power under the holding of Rocky Mountain Wholesale. In practice, however, the Liquor Control Act has a different effect. It cannot be doubted that the statutory markups prescribed by § 46-9-11 have resulted in a net profit satisfactory to all wholesalers and to the great majority of retailers. This is made manifest by the court's findings:

" * * *

"4. In computing the price of alcoholic beverages, the base price for liquor is the cost price the distiller charges the New Mexico wholesaler, then to the base price there is added the freight rate into New Mexico, taxes, a minimum mark-up of 12½%, plus additional tax on the liquor wholesaler, and the total of said figure represents the price at which the wholesaler can sell to the retailer.

"5. The retail price of alcoholic beverages is determined by adding to the wholesale price an amount equal to 25% thereof in the case of beer and 35% thereof in the case of wines and spiritous liquors.

" * * *

"7. No liquor is sold by any wholesaler at a price that is over the Beverage Journal quoted price; the Liquor Control Division would not permit any liquor sale for a price less than the scheduled price, at either the wholesale or retail level; and some retailers sell for more than the suggested price published in the Beverage Journal.

" * * * "

Two distinctions between the Cigarette Act considered in Rocky Mountain Wholesale and the Liquor Control Act now under consideration become obvious. First, the 2% markup for wholesalers and 8% markup for retailers of cigarettes, presumed to be their cost of operation, was obviously not designed to insure the profits afforded by 12% and 38.5% markups on liquor. Secondly, the Cigarette Act only prohibits a dealer from selling at below his individual cost, established by any accepted accounting procedure. It is evident that the purpose of the legislature in enacting the Cigarette Fair-Trade Act was only to prohibit below-cost or loss-leader sales, and that if proof was made of a cost of doing business other than the statutory presumption of cost, no legislation allowed all dealers to adopt that cost of doing business. This statute was not concerned with whether prices were uniform but only with prohibiting below-cost sales. Reading the Liquor Control Act as a whole, it is apparent that even a wholesaler or retailer establishing a cost of doing business below the statutory markup could nevertheless not sell below the price stipulated by a fair-trade contract established by the distiller. § 46–9–3, N.M.S.A. 1953. A reading of the fair-trade and so-called "trade-control" provisions of ch. 236, Laws 1939, together demonstrate a legislative intent to prohibit liquor dealers from selling at less than the prices established by fair-trade contracts posted in the trade journal.

 It is firmly established that laws which prohibit sales of merchandise below cost cannot be sustained if the only purpose is to make such sales illegal, Wiley v. Sampson-Ripley Co., 151 Me. 400, 120 A.2d 289; Rocky Mountain Wholesale Co. v. Ponca Wholesale Mercantile Co., supra. The legislature may not, in the guise of protecting the public interest, arbitrarily or unreasonably interfere with private interests. A claim that a statutory restriction is in the public interest cannot rest on mere conjecture, but must be supported by something of substance. State ex rel. Newman v. City of Laramie, 40 Wyo. 74, 275 P. 106; City of Alexandria v. Hall, 171 La. 595, 131 So. 722. It is apparent that the pricing provisions of the Liquor Control Act have for their purposes the fixing of uniform, standard prices to be charged for a particular product.

Section 46–9–11, supra, then, notwithstanding its announced purpose of preventing below-cost sales because of the unrealistic "cost of doing business" markups, ac-

tually amounts to a price-control markup requiring the wholesalers' and retailers' minimum selling price to be one which protects to them a net profit. The Liquor Control Acts of Ohio, Louisiana, Florida and some other states are similar in this respect. We are aware of those decisions upholding the constitutionality of liquor fair-trade, price-fixing statutes, generally upon the ground that "[f]ixing the price, at which liquor is to be sold, is an ancient method to prevent abuse in the use of a commodity of much social disadvantage." E. g., Gaine v. Burnett, 122 N.J.L. 39, 4 A.2d 37. See, also, Nocera Bros. Liquor Mart v. Liquor Control Hearing Board, 81 R.I. 186, 100 A.2d 652; Pompei Winery v. Board of Liquor Control, 167 Ohio St. 61, 146 N.E.2d 430; Schwartz v. Kelly, 140 Conn. 176, 99 A.2d 89, to cite some of them.

In our view, no useful purpose would result from a discussion of the conflicting decisions respecting price-fixing or mandatory-markup liquor statutes. We reject the view of those decisions upholding the constitutionality of such laws. In paraphrasing Skaggs Drug Center v. General Electric Co., supra, we are of the opinion that the better reasoning and logic are to be found in Schwegmann Bros. v. Louisiana Board of Alcoholic Beverage Control, 216 La. 148, 43 So.2d 248, 14 A.L.R.2d 680; and Scarborough v. Webb's Cut Rate Drug Co., Inc., 150 Fla. 754, 8 So.2d 913, holding such mandatory minimum markups to be manifestly unreasonable and not within the contemplation of the state's police power.

We hold that the fair-trade contract and markup provisions of the Liquor Control Act are manifestly unreasonable legislation, are not an appropriate exercise of the state's police power, and are in violation of article II, §§ 4 and 18 of the New Mexico Constitution.

We want to make it clear that the legislature has the power to act on the subject of below-cost sales and their effect on free competition, and may adopt legislation relating to the establishing of prices on alcoholic beverages with the view and purpose of regulating and controlling the liquor business in the interest of the public welfare. We are here only concerned with the fair-trade contract and mandatory uniform markup provisions discussed. The police power was not validly exercised in the enactment of these specific provisions.

We cannot agree with the apparent position of the trial court that the plaintiff, in a declaratory judgment action to test the constitutionality of the price-fixing provisions of the Liquor Control Act, was required to establish by evidence in the case the fact that such provisions do not promote the public peace, health, welfare and safety. The question of whether such mandatory markups constitute a reasonable attempt by the state, in the interest of their general welfare, to protect free competition, is one of law rather than of fact. See Schweg-

mann Bros. v. Louisiana Board of Alcoholic Beverage Control, supra, and Scarborough v. Webb's Cut Rate Drug Co., Inc., supra.

Nor can we agree that there is no evidence that the plaintiff has been injured by the prohibition against sales at less than the required markup. There is testimony, and the trial court found, that appellant lost sales thereby; it would follow that it lost profits as well. We think the plaintiff has, therefore, established its right to maintain this action.

It follows from what has been said that the judgment appealed from must be reversed with directions to vacate the judgment and to proceed further in a manner not inconsistent with this opinion.

It is so ordered.

CHAVEZ and COMPTON, JJ., E. T. HENSLEY, Jr., J., Ct. App., and WALDO SPIESS, J., Ct. App., concur.

## OPINION ON MOTION TO INTERVENE AND FOR REHEARING

PER CURIAM:

The motion by persons not parties to the action below to intervene or be made parties to the action in the Supreme Court is denied. Supreme Court Rule 8 only authorizes the Supreme Court to add, as parties in cases pending in this court, those who were parties below but who were not joined as parties on appeal and to substitute upon suggestion of death for a party who has died after the appeal has been taken. See Ferguson-Steere Motor Co. v. State Corporation Commission, 59 N.M. 220, 282 P.2d 705. However, the brief tendered by the petitioners for intervention will be received and has been considered as an Amicus Curiae brief on the principal issue on this appeal.

The motion for rehearing must be denied. Supreme Court Rule 20(1) (§ 21–2–1(20) (1), N.M.S.A.1953), reading: "None but jurisdictional questions shall be first raised in the Supreme Court," prevents consideration of questions which the Attorney General concedes were neither presented by the pleadings nor determined by the court below. Danz v. Kennon, 63 N.M. 274, 317 P.2d 321; Hay v. New Mexico State Highway Dept., 66 N.M. 145, 343 P.2d 845; Johnson v. Sanchez, 67 N.M. 41, 351 P.2d 449; Koran v. White, 69 N.M. 46, 363 P.2d 1038; Entertainment Corp. of America v. Halberg, 69 N.M. 104, 364 P.2d 358; In re Guardianship of Caffo, 69 N.M. 320, 366 P.2d 848; Montano v. Saavedra, 70 N.M. 332, 373 P.2d 824; Gibson v. Helms, 72 N.M. 152, 381 P.2d 429; Shelley v. Norris, 73 N.M. 148, 386 P.2d 243; McDonald v. Artesia General Hospital, 73 N.M. 188, 386 P.2d 708; Higgins v. Board of Directors of New Mexico State Hospital, 73 N.M. 502, 389 P.2d 616. A nonjurisdictional question cannot be raised for the first time in the Supreme Court where

no ruling was invoked in the trial court. Davis v. Severson, 71 N.M. 480, 379 P.2d 774. Fundamental error is neither asserted nor invoked here.

It follows that both the motion to intervene or add parties to the action pending in the Supreme Court and the motion for rehearing must be denied.

It is so ordered.

CHAVEZ, C. J., NOBLE and COMPTON, JJ., E. T. HENSLEY, Jr., C. J., Ct.App., and WALDO SPIESS, J., Ct. App., concur.